64 Cal.App.4th 122 (1998)
CHRISTINA M. SAGONOWSKY et al., Plaintiffs and Appellants,
v.
ANTONIA L. MORE, Defendant and Respondent. STEFAN M. MROZOWSKI, Plaintiff and Appellant,
v.
ANTONIA L. MORE, Defendant and Respondent.
Docket Nos. A078201, A078305.
Court of Appeals of California, First District, Division Four.
May 22, 1998.
*125 COUNSEL
Robert G. Padrick, Oreck & Oreck and Eugene R. Oreck for Plaintiffs and Appellants.
Larson & Burnham, George J. Ziser and Jason E. Lee for Defendant and Respondent.
OPINION
POCHE, J.
This case arising out of a real estate dispute raises the novel claim of whether an award made in a commercial contractual arbitration can form the basis for a subsequent action for malicious prosecution. We hold in the circumstances presented by this case that it cannot.
In January 1991 plaintiff Christina M. Sagonowsky bought a four-unit apartment in San Francisco. The contract of sale contained a clause providing for commercial arbitration.[1] In April Sagonowsky entered into a tenancy in common agreement with plaintiff Curtis Kekoa, Jr. (her then fiance), plaintiff Stefan M. Mrozowski (her uncle) and Lynn Searle, who had been a *126 tenant in the building since 1986.[2] Under that agreement Sagonowsky assigned to the other three individuals her rights "as buyer for the purchase of the real estate" "all rights, title, and interest in and to said contract [of sale], and to the real estate." The tenancy in common agreement also contained an arbitration clause which provided for binding arbitration to be had through the American Arbitration Association (AAA) or a like entity of "any dispute regarding this Agreement or the duties, obligations and benefits of ownership in the Property."
In January 1995 Searle made a demand for arbitration under the contract of sale and the tenancy in common agreement upon Sagonowsky, Kekoa and Mrozowski. The various causes of action alleged in Searle's claim all arose from her contention that she had been unlawfully induced to advance to Sagonowsky certain sums which were purportedly required for repairs to and seismic upgrade of the building. In Searle's view Sagonowsky had improperly retained $20,000 of $38,000. Searle sought an accounting by Sagonowsky.
Sagonowsky, Kekoa and Mrozowski responded to the demand for arbitration with a complaint naming Searle as defendant that was filed on March 1, 1995, in San Francisco Superior Court. Searle successfully moved to compel arbitration. Most of the claims advanced against Searle derived from the contention that she had underreported the square footage of her unit in the building and accordingly had undercontributed to certain expenses prorated between the tenants in common based upon that percentage of the total square footage of the building represented by each tenant's apartment. The three sought reformation of the tenancy in common agreement to more accurately reflect the percentage of ownership attributable to Searle.
After AAA arbitration, by an award dated October 4, 1995, the arbitrator denied both the claims of Searle and the counterclaims of Sagonowsky, Kekoa and Mrozowski.
On September 20, 1996, Mrozowski filed a complaint for malicious prosecution and professional negligence in Alameda Superior Court naming as defendant Antonia L. More, the attorney who had represented Searle in the arbitration and related proceedings. Six days later Sagonowsky, *127 proceeding in propria persona, filed a similar complaint against Attorney More in San Francisco Superior Court.[3]
On November 8, 1996, More demurred to both complaints in the respective courts. The three malicious prosecution complaints brought against More were consolidated in Alameda. The court sustained the demurrers without leave to amend and dismissed the complaints. It is from the judgment of dismissal that Mrozowski, Kekoa and Sagonowsky appeal.

Discussion
(1) In reviewing a judgment of dismissal entered after a demurrer has been sustained without leave to amend we determine whether the complaint alleges facts sufficient to state a cause of action, or can be so amended. (Crowley v. Katleman (1994) 8 Cal.4th 666, 672 [34 Cal. Rptr.2d 386, 881 P.2d 1083].) We accept as true all material facts properly pleaded as well as those which may properly be judicially noticed, but not contentions, deductions or conclusions of fact or law. (Blank v. Kirwan (1985) 39 Cal.3d 311, 318 [216 Cal. Rptr. 718, 703 P.2d 58].) It is an abuse of discretion to sustain a demurrer without leave to amend if there is a reasonable possibility the defect can be cured by amendment, but the burden remains on the plaintiff to show how the defect could be cured. (Hendy v. Losse (1991) 54 Cal.3d 723, 742 [1 Cal. Rptr.2d 543, 819 P.2d 1].)
At the conclusion of the hearing the court outlined two reasons for sustaining the demurrer as to the cause of action for malicious prosecution:[4] "Primarily ... where the parties have come together by contract ... to submit disputes to arbitration as opposed to litigation ... malicious prosecution should not be available to a successful defendant in such an arbitration proceeding. [¶] Also, I am persuaded that in this case the arbitrator made a decision, in essence, that nobody prevailed."
*128 (2) In order to state a cause of action for malicious prosecution the plaintiff must allege that the prior action (1) was commenced by or at the direction of the defendant and pursued to a legal termination in plaintiff's favor; (2) was brought without probable cause; and (3) was initiated with malice. (Crowley v. Katleman, supra, 8 Cal.4th 666, 676, quoting Bertero v. National General Corp. (1974) 13 Cal.3d 43, 50 [118 Cal. Rptr. 184, 529 P.2d 608, 65 A.L.R.3d 878].)
In sum, the court concluded that these plaintiffs were unable to state a cause of action for malicious prosecution for two reasons: First, a prior action which is private, rather than judicial, arbitration to which the parties have bound themselves by contractual agreement will not support a subsequent claim of malicious prosecution; second, that in any event this arbitration did not terminate in favor of plaintiffs Sagonowsky, Kekoa and Mrozowski.
If the arbitration was not terminated in favor of Sagonowsky, Kekoa and Mrozowski then we need not reach the question of whether a private contractual, as distinct from a judicial, arbitration, may be the basis for a cause of action for malicious prosecution. Accordingly, we look first to the favorable termination element of the cause of action.

Favorable Termination
(3) "It is hornbook law that the plaintiff in a malicious prosecution action must plead and prove that the prior judicial proceeding of which he complains terminated in his favor." (Babb v. Superior Court (1971) 3 Cal.3d 841, 845 [92 Cal. Rptr. 179, 479 P.2d 379].) Termination of the prior proceeding is not necessarily favorable simply because the party prevailed in the prior proceeding; the termination must relate to the merits of the action by reflecting either on the innocence of or lack of responsibility for the misconduct alleged against him. (Lackner v. LaCroix (1979) 25 Cal.3d 747, 751 [159 Cal. Rptr. 693, 602 P.2d 393].) Accordingly, sometimes the line between an unfavorable and a favorable termination is drawn between technical or procedural defenses which end the case (e.g., statute of limitations) and substantive defenses which have the same result. (Ibid.) In other situations the conduct of the plaintiff in the prior action permits the inference that the complaint was without merit  for example when a plaintiff voluntarily dismisses or suffers a dismissal for failure to prosecute. (Fuentes v. Berry (1995) 38 Cal. App.4th 1800, 1808 [45 Cal. Rptr.2d 848]; Stanley v. Superior Court (1982) 130 Cal. App.3d 460, 464 [181 Cal. Rptr. 878].) Conversely, a dismissal which results from a settlement is usually not a favorable termination because the plaintiff's decision to settle does not reflect the *129 plaintiff's conclusion the action was without merit. (Dalany v. American Pacific Holding Co. (1996) 42 Cal. App.4th 822, 827 [50 Cal. Rptr.2d 13]; Villa v. Cole (1992) 4 Cal. App.4th 1327, 1338 [6 Cal. Rptr.2d 644].)
(4) The arbitration in this case involved both the claims of Searle (breach of contract and of the duty of good faith and fair dealing, conversion, fraud, breach of fiduciary duty and conspiracy), who sought both damages of $27,000 and an accounting and the counterclaim of Sagonowsky, Kekoa and Mrozowski ("based on several theories including fraud, mistake and breach of contract"), who sought reformation of the tenancy in common agreement and declaratory relief.[5]
By his award the arbitrator denied the claims of both sides. In his discussion of ruling he concluded that of Searle's various claims only fraud and conversion merited discussion. As to them he found that while "Sagonowsky's acts as to the disclosures of the `developer's fee' were perhaps fraudulent as to one or more non-parties to this arbitration, there was no fraud on Searle." The arbitrator relied for this finding on the documents in evidence, having concluded the testimony of both sides was self-serving and in conflict. He found that Searle's allegations of fraud and conversion were not proven. Although the arbitrator found that Sagonowsky had been "remiss in providing full and complete accountings," he concluded there was insufficient detriment to Searle to justify "any relief."
Had Searle's claim been brought in a judicial proceeding and resulted after trial in a judgment in favor of Sagonowsky, Kekoa and Mrozowski, we would have no difficulty in concluding that there had been a termination of the prior action favorable to them. After all, the arbitrator found Searle had failed to prove any of her causes of action and denied her any relief. We are to look at the judgment as a whole in the prior action to test whether there was a favorable termination. (Crowley v. Katleman, supra, 8 Cal.4th at pp. 684-685; Dalany v. American Pacific Holding Corp., supra, 42 Cal. App.4th *130 at pp. 829-830.) Here the outcome as to Searle's claims brought to arbitration tested against the standard used in a judicial proceeding is a termination favorable to Sagonowsky, Kekoa and Mrozowski.[6]

Prior Action
(5) The question of whether a private, contractual arbitration will support a claim for malicious prosecution is a question of first impression in California.
Appellants argue that while this precise issue has not been resolved, the recent decision of our Supreme Court in Moore v. Conliffe (1994) 7 Cal.4th 634 [29 Cal. Rptr.2d 152, 871 P.2d 204] found a private, contractual arbitration to be equivalent to a judicial proceeding and thus, to constitute a prior action upon which a plaintiff may bring a claim of malicious prosecution. In Moore the court was faced with the issue of whether a witness whose testimony is elicited in discovery connected with a private, contractual arbitration proceeding is shielded from tort liability based upon that testimony to the same degree as if the witness had testified instead in a judicial proceeding, to which the litigation "privilege" of Civil Code section 47, subdivision (b)(2) applies. (Moore v. Conliffe, supra, at pp. 638-639.)
The effect of the so-called litigation privilege is, as the court noted, to limit liability or provide immunity from suit by "precluding use of the protected communications and statements as the basis for a tort action other than for malicious prosecution." (Moore v. Conliffe, supra, 7 Cal.4th at p. 638, fn. 1, italics added; Rubin v. Green (1993) 4 Cal.4th 1187, 1193-1196 [17 Cal. Rptr.2d 828, 847 P.2d 1044].)
In concluding the litigation privilege applied to private, contractual arbitration, the court looked to the purpose of the privilege. Protecting witnesses from liability for their testimony is a way of ensuring free access to the courts because witnesses need not fear retaliatory derivative tort claims and therefore will be candid. Such candor in turn is essential to maintaining the integrity of the judicial truth-seeking process. (Moore v. Conliffe, supra, 7 Cal.4th at p. 642; Silberg v. Anderson (1990) 50 Cal.3d 205, 213-214 [266 Cal. Rptr. 638, 786 P.2d 365].) Finally, the court noted that the finality of a judicial proceeding is protected from collateral attack by immunizing witnesses from liability. (Moore v. Conliffe, supra, at p. 643.) Finding that all of *131 these goals are as desirable in the context of private contractual arbitration as in a judicial proceeding, the court concluded that the purposes served by the privilege supported applying it to private, contractual arbitration. (Ibid.)
Appellants argue that Moore stands for the proposition that private, contractual arbitration is a "judicial proceeding" and therefore such an arbitration is a prior action for the purposes of malicious prosecution. This reading of Moore overstates its holding, and therefore does not resolve the issue before us.
Pacific Gas & Electric Co. v. Bear Stearns & Co. (1990) 50 Cal.3d 1118 [270 Cal. Rptr. 1, 791 P.2d 587] is even more attenuated authority for the proposition that a favorable result in a contractual arbitration will support an action for malicious prosecution. In that case the utility sued the brokerage for interfering with a long-term contract to purchase power from a local agency. (Id. at p. 1124.) There was an arbitration provision in the contract between the utility and the agency, but so far as the procedural posture of the case is described in the opinion no arbitration was had because the agency withdrew its arbitration demand in favor of a suit for declaratory relief. (Ibid.) By analogy to actions for malicious prosecution, the court in Pacific Gas & Electric held that a plaintiff who seeks to state a claim for intentional interference with prospective economic advantage or intentional interference with contract because defendant has induced another to undertake litigation must allege the litigation was brought without probable cause and concluded in favor of plaintiff. (Id. at p. 1137.) Unlike appellants we do not read Pacific Gas & Electric to hold either explicitly or implicitly that an action for malicious prosecution may be founded upon the result of a private, contractual arbitration.
Nor are we persuaded that the rule which permits judicial arbitrations to be the basis for a malicious prosecution claim requires the same result in a contractual arbitration. (Stanley v. Superior Court, supra, 130 Cal. App.3d at p. 472.) Judicial arbitration is fundamentally unlike private contractual arbitration. Our Supreme Court had called it "an adjunct to litigation." (Blanton v. Womancare, Inc. (1985) 38 Cal.3d 396, 402, fn. 5 [212 Cal. Rptr. 151, 696 P.2d 645, 48 A.L.R.4th 109].) Because it takes place only when an action has been filed (ibid.; Cal. Rules of Court, rule 1600), judicial arbitration always has its genesis in a resort by one party to the courts. Moreover, the outcome of a judicial arbitration proceeding is not a final resolution of the dispute to which the parties have agreed to bind themselves; any party can request trial de novo. (Code Civ. Proc., § 1141.20.) The judicial arbitration procedure has been likened to "a minitrial that is in effect a continuation of the settlement negotiation process" which results in "a neutral view from *132 an authoritative figure" of the merits of the claim and thus gives impetus to settlement. (Stanley v. Superior Court, supra, 130 Cal. App.3d, 460, 471.) The crucial difference between the two types of arbitration is that a judicial arbitration does not arise from an agreement to arbitrate entered into by the parties, but is mandated by the Legislature as to certain civil cases filed in court.
Thus, like a voluntary dismissal, a judicial arbitration award in favor of defendant reflects a decision on the lack of merit of a claim which was brought originally to court. Permitting such terminations to support a claim of malicious prosecution furthers the public purpose underlying the cause of action  namely to discourage abuse of the judicial system by the bringing of maliciously motivated but baseless claims. (See Crowley v. Katleman, supra, 8 Cal.4th at p. 693.) That purpose would not be directly served by permitting malicious prosecution based on a private, contractual arbitration. Indeed, the likely impact on the courts of allowing such claims would be both to increase litigation and to undermine the finality of dispute resolution to which the parties agreed.
Appellants urge us to follow the lead of decisions which have permitted malicious prosecution to be based upon actions before an administrative board or agency. (Hardy v. Vial (1957) 48 Cal.2d 577, 581 [311 P.2d 494, 66 A.L.R.2d 739] [review by State Personnel Board of firing of a professor by a state college]; Nicholson v. Lucas (1994) 21 Cal. App.4th 1657, 1664 [26 Cal. Rptr.2d 778] [review by hospital's judicial review committee of revocation by medical executive committee of most of a dentist's surgical privileges].) The thrust of their argument is that an individual who has been subjected to maliciously instituted proceedings in a private contractual arbitration suffers injuries identical to one subjected to similar proceedings in a court or in an administrative proceeding. (Hardy v. Vial, supra, 48 Cal.2d at p. 581.)
The remedy of a malicious prosecution action lies to recompense the defendant who has suffered out of pocket loss in the form of attorney fees and costs, as well as emotional distress and injury to reputation because of groundless allegations made in pleadings which are public records. (Bertero v. National General Corp., supra, 13 Cal.3d at pp. 50-51; Stanley v. Superior Court, supra, 130 Cal. App.3d at p. 468.) While the latter types of injury are not relevant here  the injury to appellants' reputation, if any, having become public only through their own resort to the judicial process  the former are certainly present. There are considerable legal fees and costs incurred in a private, contractual arbitration; in this instance the AAA charged the parties $3,900, and plaintiff Mrozowski's complaint alleged that *133 he had incurred some $12,000 in attorney fees and $2,500 in costs. These are not insignificant sums.
Nonetheless, the potential costs of arbitration were implicitly recognized by the parties when they entered into the two agreements to arbitrate. By permitting private, contractual arbitration the Legislature has supported such arbitration as a means of dispute resolution which is both "speedy and relatively inexpensive." (Ericksen, Arbuthnot, McCarthy, Kearney & Walsh, Inc. v. 100 Oak Street (1983) 35 Cal.3d 312, 322 [197 Cal. Rptr. 581, 673 P.2d 251], italics added.) More crucially, however, the public policy which favors contractual arbitration represents a legislative decision to permit parties who agree to do so for whatever reason to stay out of the courts. (Blanton v. Womancare, Inc., supra, 38 Cal.3d at p. 402, fn. 5.) Whether their motives are to cut costs, reduce delay, or simply to avoid making their dispute public, or some other motive altogether, the essence of how a dispute is to be resolved is a matter to be decided by the parties as between themselves.
In this respect then the private arbitration here is quite unlike either a public administrative proceeding reviewing the firing of a state college professor or even a review proceeding of a decision to limit staff privileges at a hospital. In both those cases the subject of the proceeding has well and truly been hailed into the proceeding, and is likely to have been required to exhaust administrative remedies before being allowed to seek judicial relief. Moreover both the college professor and the dentist were likely to have suffered damage to reputation by having had to defend themselves in proceedings before a public agency or in hearings before their professional peers. (See Stanley v. Superior Court, supra, 130 Cal. App.3d at p. 468.)
In contrast appellants expressly contracted for private arbitration and defined the scope of disputes subject to that arbitration broadly, but expressly acknowledged that certain limited avenues of action in court would still be open to them. Thus, the tenancy in common agreement contains a provision for attorney fees and costs to be awarded to the prevailing party in the event one party institutes legal action to enforce its rights under the agreement or seeks a declaration of the meaning of its terms and provisions by a court of law.[7]
The significance of such provisions is that the parties sought to limit quite narrowly the circumstances in which they would seek a judicial remedy. It *134 was certainly possible for them to have agreed to subject themselves to liability in the courts for malicious prosecution of an arbitration (or to have provided for a costs or sanction award by the arbitrator for a baseless claim); however, they made no such agreement here. Nor can we say that these arbitration agreements were the product of unequal bargaining power. In short, the intent of the parties as expressed in both agreements was to strictly limit recourse to judicial remedies and submit "any dispute" regarding each agreement to private arbitration.
Appellants urge us to insert into the agreement to arbitrate any dispute the added requirement that the dispute be a "colorable claim" or a "bona fide" claim. We decline to rewrite the agreement entered into by the parties. These parties were not impeded from agreeing to submit only colorable or bona fide claims to arbitration, nor from including in their agreement a provision for a fee award or sanction to be imposed by the arbitrator for claims found not to be colorable or bona fide. They did not do so. Having chosen in their agreement to arbitrate not to foreclose the risk that they might bear the cost of an arbitration which terminated in their favor on a claim without merit, appellants cannot expect this court to rewrite that agreement.
Accordingly, on these facts we find the trial court did not err in sustaining the demurrer to the cause of action for malicious prosecution on the basis that the private, contractual arbitration which terminated in their favor was not a "prior action" of the sort which will support such a claim.[8]
The judgment is affirmed.
Hanlon, P.J., and Reardon, J., concurred.
Petitions for a rehearing were denied June 22, 1998, and the petitions of all appellants for review by the Supreme Court were denied August 19, 1998. Kennard, J., was of the opinion that the petitions should be granted.
NOTES
[1] That clause provided in pertinent part: "Any dispute or claim in law or equity arising out of this contract or any resulting transaction shall be decided by neutral binding arbitration in accordance with the rules of the American Arbitration Association, and not by court action except as provided by California law for judicial review of arbitration proceedings.... The following matters are excluded from arbitration hereunder: (a) a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage, or real property sales contract ... (b) an unlawful detainer action, (c) the filing or enforcement of a mechanic's lien, (d) any matter which is within the jurisdiction of a probate court, or (e) an action for bodily injury or wrongful death, or for latent or patent defects...."
[2] Under that agreement title was to be "divided among the Owners ... as follows: Curtis Kekoa, Jr.-35%; Stefan M. Mrozowski-50% and Lynn Searle-15%."
[3] In their opening brief appellants Sagonowsky and Kekoa assert that Kekoa also filed, in propria persona, a malicious prosecution action against More on September 26, 1996. Despite that assertion the brief does not include a citation to Kekoa's complaint in the record before us and we find no such document in the record.
[4] Plaintiffs' complaints contained a second cause of action for professional negligence. In sustaining the demurrer to the cause of action for professional negligence the court commented that "based on all the information I have, Antonia More was not in any way the attorney for any of these three plaintiffs."

An attorney's duty runs only to the intended beneficiaries of his actions. (Held v. Arant (1977) 67 Cal. App.3d 748, 751 [134 Cal. Rptr. 422].) Plaintiffs' complaints failed to allege a basis upon which More as the attorney for Searle owed them a duty. Plaintiffs did not seek below nor on appeal have they sought to demonstrate any manner in which they could amend the complaint to allege such a duty owed them by More. (Hendy v. Losse, supra, 54 Cal.3d at p. 742; HFH, Ltd. v. Superior Court (1975) 15 Cal.3d 508, 513, fn. 3 [125 Cal. Rptr. 365, 542 P.2d 237].) It was not error to sustain the demurrer as to the cause of action for professional negligence.
[5] The record before us includes a copy of Searle's claim in the arbitration, but does not include a copy of the counterclaim in arbitration of Sagonowsky, Kekoa and Mrozowski. Accordingly we rely upon the characterization of the counterclaim by the arbitrator as included in his discussion of ruling.

The complaint filed on March 1, 1995, against Searle by appellants in San Francisco Superior Court alleged intentional and negligent misrepresentation, breach of contract and of the covenant of good faith and fair dealing, and defamation and sought declaratory relief and reformation of the tenancy in common agreement. Presumably these are the same claims contained in the counterclaim appellants submitted to arbitration.
[6] Of course, the very same thing can be said as to the counterclaim brought by Sagonowsky, Kekoa and Mrozowski against Searle in that the arbitrator concluded there was no credible evidence Searle had "knowingly misled the other parties about the size of her unit in the building or that her actions in procuring changes to the agreement were intended to deceive the Counter Claimants." The arbitrator declined to reform the tenancy in common agreement and upheld the agreement as written, finding it to be binding on all parties.
[7] The matters excluded from arbitration under the form purchase agreement are "(a) a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage, or real property sales contract as defined in Civil Code § 2985, (b) an unlawful detainer action, (c) the filing or enforcement of a mechanic's lien, (d) any matter which is within the jurisdiction of a probate court, or (e) an action for bodily injury or wrongful death, or for latent or patent defects to which the Code of Civil Procedure § 337.1 or § 337.15 applies."
[8] In light of this holding we need not reach appellants' additional claims that: (a) the arbitration award is not res judicata as to their cause of action for malicious prosecution, and (b) the award does not collaterally estop them from seeking to recover attorney fees via the malicious prosecution claim.