92 Cal.Rptr.2d 821 (2000)
78 Cal.App.4th 391
Walter M. BRENNAN, Plaintiff and Appellant,
v.
TREMCO INCORPORATED et al., Defendants and Respondents.
No. B125398.
Court of Appeal, Second District, Division Three.
February 18, 2000.
As Modified February 23 and February 29, 2000.
Review Granted June 21, 2000.
*822 Grace & Sater LLP, Michael K. Grace and Gregory J. Sater, Los Angeles, under appointment by the Court of Appeal; Greenberg, Glusker, Fields, Claman & Machtinger and Stephen S. Smith, Los Angeles, for Plaintiff and Appellant.
Brobeck, Phleger & Harrison, Los Angeles, Lawrence J. Gornick, San Francisco, Edward D. Totino, Los Angeles, and Aaron P. Sonnhalter, for Defendants and Respondents.
SCHNEIDER, J.[*]
In 1992 defendant and respondent Tremco Incorporated sued plaintiff and appellant Walter M. Brennan. (This lawsuit shall be hereinafter referred to as "the Underlying Action.") Brennan was a former employee of Tremco, who went to work for one of Tremco's competitors.[1] After the Underlying Action had been litigated for three years, Brennan obtained summary adjudication on Tremco's causes of action for conversion and misappropriation of trade secrets. Thereafter, the parties *823 agreed to arbitrate Tremco's remaining claims. Ultimately, the arbitrator ruled in Brennan's favor on these remaining claims. The court confirmed the arbitration award and entered judgment in favor of Brennan.
Brennan then filed a malicious prosecution action against Tremco in which he alleged the Underlying Action had terminated completely in his favor. (Brennan's action shall hereinafter be referred to as "the Malicious Prosecution Action.") While the Malicious Prosecution Action was pending, Sagonowsky v. More (1998) 64 Cal.App.4th 122, 75 Cal.Rptr.2d 118 was decided.[2] Based upon that case, Tremco filed a demurrer to Brennan's first amended complaint. The gravamen of this demurrer was that the agreement to arbitrate entered into by Tremco and Brennan barred Brennan's cause of action for malicious prosecution. Based on Sagonowsky the trial court sustained Tremco's demurrer without leave to amend and thereafter entered a judgment of dismissal.[3] This appeal followed.

DISCUSSION

Malicious Prosecution Law
"To establish a cause of action for the malicious prosecution of a civil proceeding, a plaintiff must plead and prove that the prior action (1) was commenced by or at the direction of the defendant and was pursued to a legal termination in his, plaintiff's, favor [citations]; (2) was brought without probable cause [citations]; and (3) was initiated with malice [citations]." (Bertero v. National General Corp. (1974) 13 Cal.3d 43, 50, 118 Cal.Rptr. 184, 529 P.2d 608.) In the present case the court did not sustain Tremco's demurrer without leave to amend because any of these elements had not been pled. Rather, the demurrer was sustained because the trial court concluded, based on Sagonowsky v. More, supra, that a private arbitration cannot be the basis of a malicious prosecution action. We must decide whether Sagonowsky applies to the facts of this case and, if it does, whether we should adopt the rationale of that decision. We must also decide whether the trial court correctly sustained the demurrers of the individual defendants, Miller and McOwan. "Our task in reviewing a judgment of dismissal following the sustaining of such a demurrer [without leave to amend] is to determine whether the complaint states, or can be amended to state, a cause of action. For that purpose we accept as true the properly pleaded material factual allegations of the complaint, together with facts that may properly be judicially noticed. [Citations.]" (Crowley v. Katleman (1994) 8 Cal.4th 666, 672, 34 Cal. Rptr.2d 386, 881 P.2d 1083.)

Sagonowsky v. More

In Sagonowsky the parties entered into an agreement that contained a commercial contractual arbitration provision. This agreement provided that "[a]ny dispute or claim in law or equity arising out of this contract or any resulting transaction shall be decided by neutral binding arbitration...." (Sagonowsky v. More, supra, 64 Cal.App.4th at p. 125, fn. 1, 75 Cal. Rptr.2d 118.) The agreement specifically excepted certain proceedings from the arbitration *824 agreement. After the arbitration successfully terminated in her favor, Sagonowsky (and two others) filed a malicious prosecution action against More, the attorney who had represented the opposing party in the arbitration proceeding. After the trial court sustained Move's demurrer without leave to amend on the ground, inter alia, that "[p]rimarily ... where the parties have come together by contract ... to submit disputes to arbitration as opposed to litigation ... malicious prosecution should not be available to a successful defendant in such an arbitration proceeding" (id., at p. 127), Sagonowsky appealed.
In affirming the trial court's judgment, the Sagonowsky court stated:
"In contrast appellants expressly contracted for private arbitration and defined the scope of disputes subject to that arbitration broadly, but expressly acknowledged that certain limited avenues of action in court would still be open to them....
"The significance of such provisions is that the parties sought to limit quite narrowly the circumstances in which they would seek a judicial remedy. It was certainly possible for them to have agreed to subject themselves to liability in the courts for malicious prosecution of an arbitration (or to have provided for a costs or sanction award by the arbitrator for a baseless claim); however, they made no such agreement here.... In short, the intent of the parties as expressed in both agreements was to strictly limit recourse to judicial remedies and submit `any dispute' regarding each agreement to private arbitration.
"Appellants urge us to insert into the agreement to arbitrate any dispute the added requirement that the dispute be a `colorable claim' or a `bona fide' claim. We decline to rewrite the agreement entered into by the parties. These parties were not impeded from agreeing to submit only colorable or bona fide claims to arbitration, nor from including in their agreement a provision for a fee award or sanction to be imposed by the arbitrator for claims found not to be colorable or bona fide. They did not do so. Having chosen in their agreement to arbitrate not to foreclose the risk that they might bear the cost of an arbitration which terminated in their favor on a claim without merit, appellants cannot expect this court to rewrite that agreement.
"Accordingly, on these facts we find the trial court did not err in sustaining the demurrer to the cause of action for malicious prosecution on the basis that the private, contractual arbitration which terminated in their favor was not a `prior action' of the sort which will support such a claim." (Sagonowsky v. More, supra, 64 Cal.App.4th at pp. 133-134, 75 Cal.Rptr.2d 118.)

SAGONOWSKY AND THE PRESENT CASE
Based on a plain reading of the Sagonowsky opinion, it is clear that decision does not stand for the proposition that a private arbitration proceeding can never be the basis of a malicious prosecution action. To the contrary, it is clear that the parties to a private arbitration agreement could, if they desire to do so, provide that the successful defendant may pursue a malicious prosecution action.[4] Additionally, it is clear that it is the facts of each case, i.e., what the parties intended, that will determine whether a malicious prosecution action may be filed by the successful defendant in a private arbitration. Unless the *825 agreement is susceptible of only one reasonable interpretation, the intent of the parties is a question of fact for the trier of fact.[5] It is with these concepts in mind that the present case must be examined.
Brennan contends that Sagonowsky is inapplicable to the present case because it involved a private arbitration, while the Underlying Action was a superior court case that had been litigated for a number of years before the case was submitted to private arbitration.[6] Brennan further states that "[a]lthough some of the causes of action in the underlying case were arbitrated, the findings of fact and conclusions of law rendered by the arbitrator had to be (and were) confirmed by the court before entry of judgment." (Emphasis in original.)
We find Brennan has missed the mark in his attempt to distinguish Sagonowsky and the present case. In our view the crucial issue is not when the private arbitration agreement was entered into, (i.e., before the litigation commenced or during the litigation) or whether the result of the private arbitration was later confirmed by the court. Rather, we believe the critical inquiry is what the parties intended when they entered into the agreement providing for private arbitration.
Sy First Family Ltd. Partnership v. Cheung (1999) 70 Cal.App.4th 1334, 83 Cal. Rptr.2d 340 supports the court's view that the proper focus in determining whether Brennan's Malicious Prosecution Action is barred by the private arbitration agreement is the intent of the parties. In Cheung the court stated that a "stipulation is an agreement and subject to the ordinary rules employed to interpret contracts. [Citations.] A court's paramount consideration in construing the stipulation is the parties' objective intent when they entered into it. [Citations.]" (Id., at p. 1341, 83 Cal.Rptr.2d 340.) (See also Ericksen, Arbuthnot, McCarthy, Kearney & Walsh, Inc. v. 100 Oak Street (1983) 35 Cal.3d 312, 323, 197 Cal.Rptr. 581, 673 P.2d 251.)
It is true that in Ericksen, supra, the court stated that "doubts concerning the scope of arbitrable issues are to be resolved in favor of arbitration." (Ericksen, Arbuthnot, McCarthy, Kearney & Walsh, Inc. v. 100 Oak Street, supra, 35 Cal.3d at p. 323, 197 Cal.Rptr. 581, 673 P.2d 251.) We interpret this statement to mean that, after evidence is adduced with respect to the party's intent regarding the scope of the arbitration agreement, the decision should be in favor of deciding an issue is arbitrable if there is any doubt about that issue. We do not interpret this statement to mean that a trial court ruling on a demurrer may resolve that doubt as a matter of law without exploring the party's intent.
In the present case the parties initially agreed to arbitrate their remaining claims in open court. The parties' agreement was spread on the record when the court stated: "With regard to this particular matter, the parties have stipulated to adjudicate the matter by binding arbitration. That, of course, means a waiver of any trial de novo, also any right of appeal."
The parties subsequently executed a written Stipulation For Binding Arbitration.[7] *826 This document provided: "It is stipulated and agreed by the parties and their attorneys that trial by judge or jury is waived and the entire case will be submitted to the Honorable G. Keith Wisot for final and binding decision from which there is no trial de novo or appeal."
We are unable to state, as a matter of law, that either the stipulation placed on the record or the subsequent Stipulation For Binding Arbitration expresses an intent of the parties that Brennan was precluded from pursuing a malicious prosecution claim. Certainly, as Brennan points out, "[a]t no time was there ever any agreement or even any discussion about Brennan relinquishing any other claims he might have against Tremco, Miller or McOwan, including claims for malicious institution of the Underlying Action." To the contrary, it is our review that the two stipulations are ambiguous and susceptible to more than one reasonable interpretation as to the intent of the parties. (Martinez v. Socoma Companies, Inc., supra, 11 Cal.3d 394, 113 Cal.Rptr. 585, 521 P.2d 841.) Specifically, we are unable to determine as a matter of law what the parties intended by reference to adjudicating "the matter" (as stated in the stipulation spread on the record) or what the parties meant by stating the "entire case" was being submitted to arbitration (as indicated in the written Stipulation For Binding Arbitration).[8] The parties' intent, therefore, must be presented to the trier of fact for adjudication. The issue could not be resolved on demurrer as the trial court did. (Cf. Paramount General Hospital Co. v. Jay (1989) 213 Cal.App.3d 360, 370, 261 Cal.Rptr. 723.)
There is certainly evidence based upon which a reasonable trier of fact could conclude it was not the intent of the parties to preclude Brennan's Malicious Prosecution Action. This evidence includes: (1) the fact that Tremco never claimed that Brennan's malicious prosecution causes of action was barred by the arbitration until after Sagonowsky was decided; (2) the fact that Tremco did not assert res judicata, collateral estoppel, accord and satisfaction or waiver as an affirmative defense in its answer. In fact, Tremco's answer contains no allegation that Brennan's claim was barred by the arbitration agreement reached in the Underlying Action; and (3) attorneys who represented respondents in the Underlying Action, and who were defendants in the Malicious Prosecution Action, settled with Brennan for $40,000, without claiming the arbitration barred Brennan's claim for Malicious Prosecution Action.
*827 On the other hand, it is conceivable that a trier fact will conclude the reference in the Stipulation For Binding Arbitration to the "entire action" was intended to mean all of Brennan's claims and not just the four causes of action that remained at the time the parties agreed to arbitration. Evidentiary support for this conclusion could come from the declaration filed by Brennan's counsel. In that declaration counsel stated that the parties' agreement was "that the entire case would be submitted to the Honorable Keith Wisot (the `Arbitrator') for final and binding decision from which there would be no right of trial de novo or appeal."
In sum, we conclude the court erred by sustaining Tremco's demurrer without leave to amend because triable issues of fact remain to be decided concerning the intent of the parties in submitting their remaining disputes to private arbitration. In order to resolve these disputes of fact, the trier of fact will be required to hear evidence concerning the parties' intent when they stipulated to private arbitration in open court and later in writing.
We express no opinion as to whether we would have reached the same result as did the court in Sagonowsky, given the language of the arbitration agreement it was construing. We do agree, however, with the views expressed in the court's opinion that "[b]y permitting private, contractual arbitration the Legislature has supported such arbitration as a means of dispute resolution which is both `speedy and relatively inexpensive.' [Citations.] More crucially, however, the public policy which favors contractual arbitration represents a legislative decision to permit parties who agree to do so for whatever reason to stay out of the courts. [Citation.] Whether their motives are to cut costs, reduce delay, or simply to avoid making their dispute public, or some other motive altogether, the essence of how a dispute is to be resolved is a matter to be decided by the parties as between themselves." (Sagonowsky v. More, supra, 64 Cal.App.4th at p. 133, 75 Cal.Rptr.2d 118.)
We further agree with the court in Sagonowsky that it is the intent of the parties that controls the issue of whether, in agreeing to submit a matter to private arbitration, the parties intended to preclude a successful defendant from pursuing a claim for malicious prosecution. In the present case, substantial triable issues of material fact exist with respect to the issue of intent.

THE DEMURRERS OF THE INDIVIDUAL DEFENDANTS
As indicated above, the trial court also sustained without leave to amend the demurrers of Miller and McOwan. Although neither Miller nor McOwan sued Brennan in the Underlying Action, Brennan sued them for malicious prosecution based on the allegation these defendants "instigated and/or were actively instrumental in initiating and maintaining the TREMCO ACTION" as well as aided and abetted, directed and assisted in maintaining Tremco's action against Brennan.
Miller and McOwan contend the trial court correctly sustained their demurrers without leave to amend because (i) "[n]o reported California case has ever held that an employee who assists his employer in pursuing a legal action can be held liable for malicious prosecution" and (ii) the manager's privilege shields Miller and McOwan's actions.
Brennan has not referred the court to any case that holds that a malicious prosecution action may be maintained against employees of a corporation who are responsible for instigating and/or maintaining an underlying action on behalf of the corporation. Brennan's reliance on Civil Code section 2343 is misplaced since that *828 section only applies to an agent's responsibility to third persons. Similarly, neither Perkins v. Blauth (1912) 163 Cal. 782, 127 P. 50 nor Bayuk v. Edson (1965) 236 Cal. App.2d 309, 46 Cal.Rptr. 49, both of which are relied upon by Brennan, involved the liability of a corporate employee for acts done by him on behalf of the corporation. Another case cited by Brennan, Lujan v. Gordon (1977) 70 Cal.App.3d 260, 138 Cal. Rptr. 654, merely holds that an action for malicious prosecution "may be maintained against a person who had no part in the commencement of the action, but who participated in it at a later time." (Lujan v. Gordon, supra, 70 Cal.App.3d at p. 262, 138 Cal.Rptr. 654.) Again, this case did not involve conduct engaged in by corporate employees on behalf of the corporation.
Other cases referred to by Brennan are equally unpersuasive. (Paramount General Hospital Co. v. Jay (1989) 213 Cal.App.3d 360, 365, fn. 2, 261 Cal. Rptr. 723, simply cites Lujan for the proposition quoted above.) In Williams v. Hartford Ins. Co. (1983) 147 Cal.App.3d 893, 195 Cal.Rptr. 448 the issue was whether a statement that was otherwise absolutely privileged in a defamation action could nevertheless be an element of a malicious prosecution action. In answering this question in the affirmative, the court had no occasion to discuss the question of whether a corporate employee who was responsible for instigating and maintaining an action on behalf of a corporation could later be sued for malicious prosecution. Moreover, this issue was not involved in any of the other cases cited by Brennan, namely, Frances T. v. Village Green Owners Association (1986) 42 Cal.3d 490, 229 Cal.Rptr. 456, 723 P.2d 573; Wyatt v. Union Mortgage Co. (1979) 24 Cal.3d 773, 157 Cal.Rptr. 392, 598 P.2d 45; and United States Liab. Ins. Co. v. Haidinger-Hayes, Inc. (1970) 1 Cal.3d 586, 83 Cal.Rptr. 418, 463 P.2d 770. Rather, these cases involve the liability of a corporate director or officer for his or her own torts. In the present case it is not alleged Miller or McOwan were officers or directors of Tremco.[9] In fact, Brennan alleged Miller and McOwan were acting within the course and scope of their agency and employment.
It is established, of course, that "[a] corporation can act only through its individual employees." (Janken, supra, 46 Cal.App.4th at p. 77, 53 Cal.Rptr.2d 741.) This is particularly true with respect to filing a lawsuit on behalf of the corporation. Stated otherwise, the lawsuit could not be filed on behalf of a corporation unless it was authorized by a director, officer or employee. In our view it would run counter to the decisions in Wise v. Southern Pacific Co., supra, and Janken v. GM Hughes Electronics, supra, to hold that a corporate employee cannot be held liable as a conspirator or aider and abettor in filing a lawsuit on behalf of a corporation, but can be held liable as an instigator of the filing. Our conclusion is buttressed by the decision in Black v. Bank of America (1994) 30 Cal.App.4th 1, 6, footnote 4, 35 Cal.Rptr.2d 725 wherein the court stated that "[t]he individual defendants in this case were Bank employees who carried out but did not create Bank policies. Liability therefore cannot attach to these defendants under the rule that directors and *829 officers of a corporation may become liable for the corporation's tortious conduct if they `directly ordered, authorized or participated in the tortious conduct.' [Emphasis added.] [Citation.]"
In sum, we conclude the trial court correctly sustained the demurrers of Miller and McOwan without leave to amend because none of the theories upon which Brennan seeks to impose liability on these defendants is legally tenable. Moreover, the court did not err in denying Brennan leave to amend his complaint against these defendants because he has not suggested how he could amend his pleading to overcome the authorities cited above.

DISPOSITION
Judgment in favor of Tremco is reversed. The judgment in favor of Miller and McOwan is affirmed. Brennan to recover costs on appeal against Tremco; Jordan Miller and Dick McOwan to recover costs against Brennan.
KLEIN, P.J., and ALDRICH, J., concur.
NOTES
[*] Assigned by the Chairperson of the Judicial Council.
[1] Tremco's complaint alleged causes of action for breach of contract, conversion, misappropriation of trade secrets, intentional interference with perspective economic advantage, fraud and unfair competition. Tremco dismissed the fraud cause of action without prejudice in 1993. A seventh cause of action for declaratory relief was added in 1996.
[2] In Sagonowsky the court held that a malicious prosecution action could not be based upon the outcome of an arbitration that was held pursuant to a private arbitration agreement. Sagonowsky will be discussed later in this opinion.
[3] The court also sustained without leave to amend Brennan's claims against the individual defendants, Jordan Miller and Dick McOwan, on the ground they were employees of Tremco who had been acting within the course and scope of their employment. Miller's demurrer had been joined with Tremco's. McOwan filed a separate demurrer. Brennan's appeal from the judgment involving Tremco and Miller has been consolidated with his appeal from the judgment obtained by McOwan.
[4] Just such an agreement was made in Law Offices of Ian Herzog v. Law Offices of Joseph Fredrics (1998) 61 Cal.App.4th 672, 71 Cal. Rptr.2d 771.
[5] See Martinez v. Socoma Companies, Inc. (1974) 11 Cal.3d 394, 400, 113 Cal.Rptr. 585, 521 P.2d 841 ["t]hus, we must determine whether the pleaded written contracts support plaintiffs' claim either on their face or under any interpretation to which the contracts are reasonably susceptible and which is pleaded in the complaint or could be pleaded by proper amendment."
[6] It will be recalled the Underlying Action had been pending for almost four years before the matter was submitted to private arbitration. By that time only four causes of action remained, three causes of action having been earlier dismissed or disposed of by summary adjudication.
[7] The parties' written Stipulation was apparently not before the trial court when it sustained the demurrers of all three defendants without leave to amend. This stipulation has been included, however, in the record on appeal. Because the parties have argued on appeal the significance of this document, we have examined it and included it in our analysis.
[8] Tremco claims that because the written stipulation of the parties provides "the entire case" was to be arbitrated, there is no merit to Brennan's claim that only the four remaining causes of action were to be arbitrated. Since the other three causes of action had already been disposed of by dismissal or summary adjudication, it is difficult to understand how those causes of action could have been involved in the arbitration. Tremco also claims that Brennan could not base a malicious prosecution action on the causes of action with respect to which he obtained summary adjudication because (i) such an action will not lie until a judgment is ultimately rendered, citing Rich v. Siegel (1970) 7 Cal. App.3d 465, 469, 86 Cal.Rptr. 665 and (ii) "Tremco never had the opportunity to appeal the summary adjudication because the entire case was submitted to arbitration without the right to trial de novo or appeal." The short answer to these contentions is that if the parties intended that Brennan could sue for malicious prosecution after prevailing in the arbitration, both the arbitrated claims and the claims with respect to which summary adjudication was granted could support such a cause of action.
[9] Brennan's allegations of a conspiracy is equally unavailing since "[a]gents and employees of a corporation cannot conspire with their corporate principal or employer where they act in their official capacities on behalf of the corporation and not as individuals for their individual advantage. [Citations.]" (Wise v. Southern Pacific Co. (1963) 223 Cal. App.2d 50, 72, 35 Cal.Rptr. 652.) (Disapproved on other grounds Applied Equipment Corp. v. Litton Saudi Arabia Ltd. (1994) 7 Cal.4th 503, 521, 28 Cal.Rptr.2d 475, 869 P.2d 454.) Brennan's aiding and abetting allegation is equally unpersuasive "since a corporation can act only through its employees, the element of concert is missing in the `aiding and abetting' context just as in the conspiracy context." (Janken v. GM Hughes Electronics (1996) 46 Cal.App.4th 55, 78, 53 Cal.Rptr.2d 741.)