[No. D045755. Fourth Dist., Div. One. Feb. 24, 2006.]

STAFFPRO, INC., et al., Plaintiffs and Appellants, v.
ELITE SHOW SERVICES, INC., et al., Defendants and Respondents.

---

## COUNSEL

Bacalski, Koska & Ottoson, Christopher J. Workman and Paul C. Johnson, Jr., for Plaintiffs and Appellants.

Gordon & Rees, Jan K. Buddingh, Jr., and Kenneth S. Perri for Defendants and Respondents Elite Show Services, Inc., Gus Kontopuls and John Kontopuls.

Klinedinst, Andrew N. Kohn, G. Dale Britton and Gregor A. Hensrude for Defendants and Respondents Rutherford & Rybacki and Matthew R. Rutherford.

---

## OPINION

**IRION, J.**—A plaintiff in a malicious prosecution action must demonstrate that the litigation alleged to have been maliciously prosecuted was pursued to a legal termination in the plaintiff's favor. The primary issue in this appeal is whether this "favorable termination" element can be established where a plaintiff prevailed on some, but not all, of the causes of action asserted against it in the complaint in the underlying litigation. We conclude that in such circumstances, a plaintiff cannot establish favorable termination and is consequently precluded from maintaining a subsequent malicious prosecution action.

## FACTS

In the instant malicious prosecution action, StaffPro, Inc.[1] contends that it was the victim of a meritless civil action, maliciously prosecuted by Elite Show Services, Inc.[2] The relevant facts are as follows:

StaffPro and Elite are competitors in the event-staffing industry. In May 2001, Elite filed suit against StaffPro and two other unrelated defendants in superior court.[3] Elite's complaint (the Complaint) alleged that StaffPro was engaging in unlawful practices designed to "artificially lower [StaffPro's] cost of labor and to diminish or destroy competition for security guard and traffic control services in San Diego." The Complaint specifically singled out a number of such practices, including using unlicensed personnel to perform security officer functions, utilizing security guard personnel who did not possess valid "guard cards" as required by state law, allowing unlicensed employees to direct traffic at events, and staffing events with group labor paid by lump-sum payments to third party organizations without required withholdings.

The Complaint asserted three causes of action against StaffPro, alleging that StaffPro: (i) engaged in unlawful business practices in violation of Business and Professions Code section 17200; (ii) offered below-cost services in violation of Business and Professions Code section 17043; and (iii) under-bid Elite on a number of specifically enumerated contracts, constituting intentional interference with prospective business advantage. Each of Elite's causes of action was based on StaffPro's alleged reliance on the unlawful practices specified *ante* to obtain a competitive advantage. Elite sought injunctive relief, attorney fees and monetary damages.

After filing the Complaint, Elite sought a preliminary injunction to immediately preclude StaffPro from engaging in the allegedly unlawful practices. The trial court granted the injunction in part, finding that Elite "established a reasonable probability of prevailing on the merits of its case" with respect to the group labor allegations. The court's order stated: "Staffpro is obtaining an unfair advantage by not treating [group laborers] as employees and providing

---

[1] The plaintiffs in the malicious prosecution action are StaffPro, Inc. and its owner, Cory Meredith, who were the defendants in the underlying action. We refer to these plaintiffs collectively as "StaffPro."

[2] The defendants in the malicious prosecution action are: Elite Show Services, Inc.; its owners, Gus and John Kontopuls; its law firm in the underlying action, Rutherford & Rybacki, LLP (Rutherford LLP); and the managing partner of Rutherford LLP, Matthew R. Rutherford. Except where specificity is required, we refer to these defendants collectively as "Elite."

[3] These other defendants settled Elite's claims against them prior to the conclusion of the trial and are not parties to this appeal.

workers' compensation and state disability benefits and paying appropriate employment and payroll taxes."

As the litigation progressed, StaffPro filed a motion for summary adjudication as to Elite's second cause of action. The trial court denied the motion, finding that Elite had demonstrated "a triable issue" with respect to the allegations in that cause of action.

Immediately prior to trial, Elite dismissed its third cause of action and withdrew its claim for monetary damages as to its second cause of action, limiting the issues to be resolved at trial to the legality of StaffPro's business practices and Elite's requests for injunctive relief and attorney fees.

Trial commenced on December 17, 2002. At the conclusion of Elite's presentation of evidence, StaffPro moved for judgment under Code of Civil Procedure section 631.8. (See *id.,* subd. (a) ["After a party has completed his presentation of evidence in a trial by the court, the other party . . . may move for a judgment"].) The motion was granted as to Elite's second cause of action but denied as to the first; trial proceeded on Elite's first cause of action. At the conclusion of trial, the court granted relief to Elite, ordering StaffPro to take the following remedial measures: (1) "To ensure Workers' Compensation coverage is afforded to 'group labor' personnel, either by ensuring that each nonprofit organization certifies such coverage or providing such coverage itself"; and (2) "To utilize only those personnel licensed pursuant to Business [and] Professions Code section 7583.11 for the following activities: 1. Restraints upon or limitation of movement of the general public which, if escalated, requires force and physical restraint; 2. Pat-downs requiring physical intrusion into the personal space of a member of the general public; 3. Car searches requiring physical intrusion into the personal space of a member of the general public." With respect to StaffPro's alleged use of employees without proper "guard cards," the court ruled that there was evidence supporting the allegations, but that "[n]eed for relief concerning these established practices is rendered moot" by regulatory developments that had become effective after trial commenced. The court also recognized that there was evidence that StaffPro unlawfully utilized uncertified persons to control traffic, but relying in part on StaffPro's contention that "it has recently become licensed to certify traffic control employees and is utilizing the license to certify those assigned to traffic control duties," the court declined to order relief. Concerning Elite's allegations of other unlawful practices with respect to events staffed on school property, the court noted that the evidence, "while significant, is insufficient . . . to warrant injunction."

In addition to ordering the relief described *ante*, the trial court made a number of findings relevant to the determination of whether Elite's lawsuit was meritorious. The court found that Elite "was informed and believed in good faith that the alleged unfair business practices and unfair competitive practices had a serious negative impact upon plaintiff's business in San Diego County." The court stated that "there is a dearth of published opinion, definitions or case law dealing with" the event staffing industry and a number of "differing . . . opinions by members of the industry as to what is legal or illegal, fair or unfair." Consequently, the court found the lawsuit provided a benefit to the public which "stands to benefit from a clarification of the use of licensed and unlicensed personnel who both manage and control them." Finally, the court specified that neither party was a prevailing party and each would bear its own costs and fees.[4]

In April 2004, StaffPro filed the instant lawsuit alleging that Elite's prosecution of the above-described lawsuit, specifically the second and third causes of action of that lawsuit, constituted the tort of malicious prosecution. Elite responded by moving under Code of Civil Procedure section 425.16 (section 425.16) to strike StaffPro's malicious prosecution cause of action. The trial court granted Elite's motion, ruling that StaffPro failed to carry its burden under section 425.16 of establishing a probability that it would prevail. The court subsequently entered judgment in favor of Elite.

## DISCUSSION

StaffPro appeals the trial court's ruling that StaffPro failed to establish a probability that it would prevail on two of the elements of its malicious prosecution cause of action, namely, favorable termination and lack of probable case. We conclude that the trial court was correct with respect to the favorable termination element. As this is a sufficient ground for dismissal of

---

[4] Despite the court's determination that there was no prevailing party, StaffPro was able to recover costs pursuant to a pretrial Code of Civil Procedure section 998 offer of settlement. An appeal of the trial court's determination of that issue resulted in a published opinion of this court, *Elite Show Services, Inc. v. Staffpro, Inc.* (2004) 119 Cal.App.4th 263, 266 [14 Cal.Rptr.3d 184]. Contrary to various arguments of the parties in this case, our opinion in that case offers no support for either party with respect to the issues now presented. (See *People v. Banks* (1993) 6 Cal.4th 926, 945 [25 Cal.Rptr.2d 524, 863 P.2d 769] ["It is well settled that language contained in a judicial opinion is ' "to be understood in the light of the facts and issue then before the court, and an opinion is not authority for a proposition not therein considered" ' "].)

StaffPro's action, we need not address the correctness of the trial court's ruling with respect to the probable cause element.

I

*Applicable Legal Standards*

We begin by summarizing the applicable legal standards. Under section 425.16, the trial court was required to strike StaffPro's malicious prosecution cause of action unless StaffPro established "a probability" that it would prevail on that claim. (§ 425.16, subd. (b)(1).)[5]

■ To make this showing, StaffPro had to demonstrate a probability of prevailing with respect to each of the elements of its malicious prosecution action, namely, that Elite's underlying action was (1) brought (or continued) without probable cause, (2) initiated with malice, and (3) pursued to a legal termination in StaffPro's favor. (See *Zamos v. Stroud* (2004) 32 Cal.4th 958, 965–966 [12 Cal.Rptr.3d 54, 87 P.3d 802] (*Zamos*).) If a plaintiff cannot establish any one of these three elements, its malicious prosecution action will fail. (*Ibid.*; *Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d 863, 871–872 [254 Cal.Rptr. 336, 765 P.2d 498] (*Sheldon Appel*).)

We review the trial court's ruling on a section 425.16 motion de novo (*Zamos, supra,* 32 Cal.4th at p. 965; *HMS Capital, Inc. v. Lawyers Title Co.* (2004) 118 Cal.App.4th 204, 212 [12 Cal.Rptr.3d 786] ["We review the trial court's rulings on an anti-SLAPP motion de novo, conducting an independent review of the entire record"]); the substantive ground upon which we rule here, the element of favorable termination in a malicious prosecution action, is also a legal question for the court to decide. (*Sierra Club Foundation v.*

---

[5] Section 425.16 provides, inter alia, that "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).) StaffPro concedes that the instant malicious prosecution claim satisfies the threshold requirement under section 425.16 that "the challenged cause of action is one arising from protected activity." (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 740 [3 Cal.Rptr.3d 636, 74 P.3d 737]; see § 425.16, subd. (b)(1).)

*Graham* (1999) 72 Cal.App.4th 1135, 1149 [85 Cal.Rptr.2d 726] (*Sierra Club*) ["The element of favorable termination is for the court to decide; thus, our review is de novo"].)

II

*StaffPro Failed to Demonstrate a Probability of Prevailing on Its Malicious Prosecution Action*

The trial court ruled that StaffPro could not establish favorable termination of the underlying lawsuit because Elite was successful on its first cause of action and Elite's other two causes of action were not "severable" from that cause of action. StaffPro contends that this ruling was erroneous for two reasons. First, StaffPro argues that the remedial order issued against it in the underlying action should be considered a termination in *StaffPro's favor* because the order was not as broad as an earlier settlement offer made by StaffPro. Second, StaffPro argues that even if Elite was successful on its first cause of action, Elite's second and third causes of action are severable from the first, and therefore can serve as an independent basis for StaffPro's malicious prosecution action. As discussed *post*, we find no merit in either of StaffPro's contentions.

A

*The Favorable Termination Element*

Prior to analyzing StaffPro's contentions, we first define the concept of favorable termination. To be considered "favorable" for purposes of a malicious prosecution action, a termination in the underlying action "must reflect the merits of the action *and the plaintiff's innocence* of the misconduct alleged in the lawsuit." (*Pender v. Radin* (1994) 23 Cal.App.4th 1807, 1814 [29 Cal.Rptr.2d 36] (*Pender*), italics added, citing *Lackner v. LaCroix* (1979) 25 Cal.3d 747, 750 [159 Cal.Rptr. 693, 602 P.2d 393] (*Lackner*).) "The key is whether the termination reflects on the underlying defendant's innocence. [Citations.] If the resolution of the underlying litigation 'leaves some doubt as to the defendant's innocence or liability[, it] is *not* a favorable termination, and bars that party from bringing a malicious prosecution action against the

underlying plaintiff.' " (*Eells v. Rosenblum* (1995) 36 Cal.App.4th 1848, 1855 [43 Cal.Rptr.2d 323] (*Eells*), alteration and italics in original.)[6] Favorable termination "is an essential element of the tort of malicious prosecution, and it is strictly enforced." (*Ferreira v. Gray, Cary, Ware & Freidenrich* (2001) 87 Cal.App.4th 409, 413 [104 Cal.Rptr.2d 683] (*Ferreira*).)

B

### *Elite's First Cause of Action Did Not Terminate in StaffPro's Favor*

On appeal, StaffPro first seeks to blunt the significance of the court's order in the underlying litigation with respect to Elite's first cause of action—an order that required *StaffPro* to take a number of remedial actions. StaffPro argues that this remedial order should be considered a result *favorable to StaffPro* because it was "more limited in scope than the actions StaffPro agreed to undertake" as part of an earlier settlement offer. We disagree with StaffPro's analysis.

Well-established case law requires that a malicious prosecution plaintiff demonstrate that the complained-of action was " 'pursued to a legal termination in [the] *plaintiff's*[] favor.' " (*Crowley v. Katleman* (1994) 8 Cal.4th 666, 676 [34 Cal.Rptr.2d 386, 881 P.2d 1083] (*Crowley*), italics added.) We have found no authority, and StaffPro cites none, to suggest that there is an exception to the above formulation where an action is pursued to a termination in the *defendants'* favor, but the termination is less favorable than an earlier settlement proposal. In fact, the case law regarding settlements in the malicious prosecution context strongly suggests that StaffPro's offer to stipulate to what it characterizes as "the precise injunctive relief that Elite prayed for in its complaint" weakens rather than strengthens its case for favorable termination, as it implies that StaffPro was *not* innocent of the conduct alleged by Elite. (See, e.g., *Ferreira, supra*, 87 Cal.App.4th at

---

[6] In its reply brief, StaffPro contends that the requirement that a termination reflect on the plaintiff's innocence "means only that the underlying action must have been terminated on the merits, and not on a procedural matter such as the statute of limitations." This is incorrect. The requirement that a favorable termination reflect on "the merits of the action," is simply one step in the broader inquiry into whether that termination " 'tends to indicate the innocence of the accused.' " (*Lackner, supra*, 25 Cal.3d at p. 750 [the " 'theory underlying the requirement of favorable termination is that it tends to indicate the innocence of the accused' "].) Consequently, a termination that "reflect[s] the merits" is not a substitute for, but rather a prerequisite to a finding that termination reflects "the plaintiff's innocence of the misconduct alleged." (*Pender, supra*, 23 Cal.App.4th at p. 1814.)

pp. 413–414 ["where both sides give up anything of value in order to end the litigation, a party cannot later claim he received a favorable termination"].)

Thus, StaffPro's contention is not an argument based on existing case law, but an invitation, without statutory or case authority, to broaden the malicious prosecution tort to encompass a new category of lawsuits—those that were favorably terminated solely by reference to the parties' earlier settlement positions. We decline this invitation. An expansion of the tort along the lines suggested by StaffPro would contradict our Supreme Court's pronouncement that "the tort of malicious prosecution 'should not be expanded,' " but contained within its already established boundaries. (*Brennan v. Tremco Inc.* (2001) 25 Cal.4th 310, 314 [105 Cal.Rptr.2d 790, 20 P.3d 1086] (*Brennan*) [relying on "trend against creating or expanding derivative tort remedies, including malicious prosecution" to support ruling that favorable termination of arbitration could not support malicious prosecution claim]; *Crowley, supra,* 8 Cal.4th at p. 680 [contours of right to bring malicious prosecution action "should not be expanded"]; cf. *Sheldon Appel, supra,* 47 Cal.3d at p. 872 [malicious prosecution is "a disfavored cause of action" and consequently "the elements of the tort have historically been carefully circumscribed"].) These established boundaries leave no room for StaffPro's contention that even where the favorable termination element cannot be established by a legal termination in the malicious prosecution plaintiff's favor (*Crowley,* at p. 676), it can still be shown by comparing a legal termination in the defendant's favor with the plaintiff's earlier settlement offer.

In sum, we reject StaffPro's contention that the favorable termination element of the malicious prosecution tort can be established by reference to the parties' prior settlement positions. We conclude instead that Elite's first cause of action, which resulted in a court order requiring StaffPro to take remedial action, did not terminate in StaffPro's favor.[7] (*Eells, supra,* 36

---

[7] In its reply brief, StaffPro makes the additional argument that the trial court, in its order, found "against Elite personally in every respect." This somewhat misleading statement is based on the trial court's determination that "[t]he court finds that [Elite] has standing to proceed with this litigation," but only as a *representative* plaintiff under Business and Professions Code section 17200. From this ruling, StaffPro argues that dictum in *Casa Herrera, Inc. v. Beydoun* (2004) 32 Cal.4th 336 [9 Cal.Rptr.3d 97, 83 P.3d 497] (*Casa Herrera*) requires a finding of favorable termination. (*Id.* at p. 342 [stating that favorable termination can be shown in a number of ways, including where the trial court has "held that the defendant, as a matter of law, violated no duty to the plaintiff"].) We do not believe the *Casa Herrera* dictum, which did not consider this issue, was meant to apply in this context. A contrary conclusion would lead to the absurd result that all representative actions would be subject to malicious prosecution claims regardless of the result of the underlying litigation and the plaintiff's guilt or innocence of the allegations considered therein. (*Ibid.* [stating that focus of favorable termination inquiry is the malicious prosecution "plaintiff's innocence of the misconduct alleged in the lawsuit"].)

Cal.App.4th at p. 1855 [favorable termination cannot be established if "the resolution of the underlying litigation 'leaves some doubt as to the defendant's innocence or liability' "].)[8]

## C

### *Severability Is Not the Touchstone of the Favorable Termination Element of a Malicious Prosecution Cause of Action*

Alternatively, StaffPro contends that its inability to demonstrate favorable termination of Elite's *first* cause of action does not bar it from establishing that Elite maliciously prosecuted its *second* and *third* causes of action. In making this argument, StaffPro contends that the favorable termination element of the malicious prosecution tort must be determined with respect to each "severable" cause of action, and that Elite's second and third causes of action, which terminated in StaffPro's favor, are severable from the first.

StaffPro premises its argument on a statement from *Singleton v. Perry* (1955) 45 Cal.2d 489, 497 [289 P.2d 794] (*Singleton*), that for a viable malicious prosecution action, " ' "it is not necessary that the whole [underlying] proceeding be utterly groundless, for, if groundless charges are maliciously and without probable cause, coupled with others which are well founded, they are not on that account the less injurious." ' " This reliance on *Singleton* is unavailing and demonstrates the flaw that lies at the core of StaffPro's analysis, namely, the failure to distinguish between cases evaluating the *probable cause* element of the tort of malicious prosecution (such as *Singleton*) and those that concern the distinct element at issue here— *favorable termination*.

█ As we stated in *Dalany v. American Pacific Holding Corp.* (1996) 42 Cal.App.4th 822, 829 [50 Cal.Rptr.2d 13] (*Dalany*), a case not cited by any of the parties to this appeal, our Supreme Court's decision in *Crowley, supra,* 8 Cal.4th 666, dictates that the severability analysis implicit in *Singleton* is

---

[8] StaffPro also emphasizes that the trial court ruled in the form of an order rather than an injunction. We assign little significance to this distinction as there was no suggestion that the court's order was anything other than a mandatory decree that StaffPro alter its practices; the court stated that its decision to rely on an order rather than the "drastic measure of regulation by injunction" was "premised heavily upon the pledges by counsel of Staff Pro in the presence of its CEO and major stockholder to comply with the . . . order[] without the issuance of an injunction [—t]hese pledges were made on numerous occasions on the record and were backed by the extreme credibility of its counsel earned by his performance during the trial."

inapplicable to the favorable termination element of the malicious prosecution tort. (*Dalany*, at p. 829 [holding that "[t]he Supreme Court [in *Crowley*] has recently emphasized that although for purposes of determining probable cause each theory asserted in a prior action must be separately considered, separate consideration of prior theories of claims is not appropriate with respect to the element of favorable termination"].) To the contrary, for purposes of determining favorable termination, " ' "[t]he court in the action for malicious prosecution will not make a separate investigation and retry each separate allegation without reference to the result of the previous suit *as a whole* . . . ." ' " (*Crowley*, at p. 684, italics added.) Instead, " 'consideration should be given to the judgment as a whole' " as it is " 'the decree or judgment itself in the former action [that] is the criterion by which to determine who was the successful party in such proceeding.' " (*Id.* at p. 685.)[9] Thus, the severability analysis that StaffPro urges us to apply in the instant case has been explicitly rejected by our Supreme Court, which requires instead that we look to the judgment in the underlying action " 'as a whole.' " (*Crowley, supra*, 8 Cal.4th at pp. 684–685.)[10]

We recognize that a handful of published opinions of the California Courts of Appeal apply severability analysis to determine the favorable termination element of the tort of malicious prosecution.[11] With one exception, however, these cases were decided prior to *Crowley* and our interpretation of that

[9] The favorable termination analysis in *Crowley* was arguably not required for the decision in that case. Nevertheless, Supreme Court "dictum, while not controlling authority, carries persuasive weight and should be followed where it demonstrates a thorough analysis of the issue or reflects compelling logic." (*Smith v. County of Los Angeles* (1989) 214 Cal.App.3d 266, 297 [262 Cal.Rptr. 754].)

[10] While the parties all contend that we should resolve the issue of favorable termination by applying the "primary rights" severability analysis used in *Freidberg*, none of the parties distinguish *Crowley*'s explicit disapproval of that analysis. Rutherford LLP, the only party to specifically address the issue, argues that *Crowley* "does not change th[e severability] rule," because although the *Crowley* court "mentioned that the primary right theory relied upon in *Freidberg* might be inappropriate," the high court "has not offered an alternative basis to determine severability." Rutherford LLP cites *Hindin v. Rust* (2004) 118 Cal.App.4th 1247 [13 Cal.Rptr.3d 668] (*Hindin*) for the proposition that "the Courts of Appeal still use primary right." We find Rutherford LLP's contentions unavailing for two reasons. First, *Hindin* does not support Rutherford LLP's argument, as that case concerned only the probable cause element of the malicious prosecution tort and itself notes that *Crowley* "question[ed the] propriety of relying on the primary right theory to define the prior action for purposes of the favorable termination requirement." (*Hindin*, at p. 1258, fn. 7.) Second, as we stated in *Dalany, supra*, 42 Cal.App.4th 822, the *Crowley* court did not simply criticize the application of the primary right theory, but the entire severability analysis. Thus, there was no need for the high court to provide "an alternative basis to determine severability." Rather, as discussed *post*, the court stated that the favorable termination question must be resolved without reference to severability, but rather by evaluating the result of the " '*entire* action.' " (*Crowley, supra*, 8 Cal.4th at p. 685.)

[11] (See, e.g., *Tabaz v. Cal Fed Finance* (1994) 27 Cal.App.4th 789, 794 [33 Cal.Rptr.2d 134] (*Tabaz*) [applying severability analysis to allow malicious prosecution lawsuit despite award to defendant in underlying suit]; *Paramount General Hospital Co. v. Jay* (1989) 213 Cal.App.3d

decision in *Dalany*. The one exception, *Sierra Club, supra,* 72 Cal.App.4th 1135, is in conflict with *Dalany*, and we find its analysis to be flawed.

*Sierra Club* rejects the position we espoused in *Dalany* that "one must look to the judgment as a whole in deciding whether termination is favorable" (*Sierra Club, supra,* 72 Cal.App.4th at p. 1152), and instead, in the following dicta from that opinion, decides that favorable termination of severable claims will support a claim for malicious prosecution: "Groundless charges coupled maliciously and without probable cause with well-founded causes are no less injurious for the coupling. (*Singleton*[, *supra,*] 45 Cal.2d 489, 497–498 . . . .) *Thus, a malicious prosecution plaintiff is not precluded from establishing favorable termination where severable claims are adjudicated in his or her favor.* (*Paramount General*[, *supra,*] 213 Cal.App.3d 360, 369–370.)" (*Sierra Club, supra,* 72 Cal.App.4th at p. 1153, italics added.) As our earlier analysis indicates, *Sierra Club*'s reasoning is deficient for at least three reasons.

First, the authorities *Sierra Club* cites for its conclusion are inapposite. The primary case *Sierra Club* relies on, *Paramount General,* predates *Crowley* and relies on *Freidberg* for its conclusion that favorable termination can be established through a severability analysis. *Crowley*'s explicit disapproval of the severability analysis in *Freidberg* (see *Crowley, supra,* 8 Cal.4th at pp. 683–686) necessarily implies similar disapproval of that same analysis in *Paramount General.* The other case cited by *Sierra Club, Singleton,* is a probable cause case decided decades prior to *Crowley*. Reliance on a probable cause case that did not consider the element of favorable termination directly contradicts *Crowley*'s instruction that these elements are analytically distinct. (*Crowley,* at p. 686.)

Second, *Sierra Club*'s interpretation of *Crowley* focuses exclusively on, and in our view misinterprets, a minor point in the opinion. *Sierra Club* relies on a portion of *Crowley* that criticizes severability analysis because that analysis only determines whether the plaintiff obtained "*at least* a ' "partial favorable termination," ' " leaving unanswered the " 'question of policy' " as to whether such partial favorable termination can support a malicious prosecution action. (*Sierra Club, supra,* 72 Cal.App.4th at p. 1153, quoting *Crowley, supra,* 8 Cal.4th at p. 686, italics added.) Our primary difference with *Sierra Club* is that we do not believe *Crowley* raises this "question of policy"

360, 369–370 [261 Cal.Rptr. 723] (*Paramount General*) [allowing lawsuit to go forward despite partially unfavorable termination of underlying action because causes of action "appear to have been severable"]; *Freidberg v. Cox* (1987) 197 Cal.App.3d 381, 388 [242 Cal.Rptr. 851] (*Freidberg*) [finding no favorable termination where malicious prosecution defendant succeeded on one of its causes of action in underlying lawsuit because other causes of action "were not separable"]; see also 5 Witkin, Summary of Cal. Law (10th ed. 2005) Torts, § 500, p. 734 [citing pre-*Crowley* decisions for proposition that partial favorable termination can be shown where "the causes of action in the underlying action were separate or severable"].)

to leave it unresolved. Rather, the high court answers the question by subsequently announcing the rule that a malicious prosecution plaintiff must demonstrate " 'favorable termination of the *entire* [underlying] action.' " (*Crowley*, at pp. 685–686; see *Dalany, supra,* 42 Cal.App.4th at p. 829.) Such a rule, which requires judgment to have " 'been reached in the plaintiff's favor in the prior action as a *whole*' " (*Crowley,* at p. 686, italics added), cannot coexist with an exception for *partial* favorable termination.

Third, whatever the merits of *Sierra Club*'s interpretation of the portion of *Crowley* upon which it relies, its conclusion that "a malicious prosecution plaintiff is not precluded from establishing favorable termination where severable claims are adjudicated in his or her favor" (*Sierra Club, supra,* 72 Cal.App.4th at p. 1153) cannot be reconciled with the overall message of *Crowley*—that favorable termination must be determined by evaluating " 'the judgment as a whole' " (*Crowley, supra,* 8 Cal.4th at p. 685). *Sierra Club,* in fact, makes no attempt to reconcile this conflict, or for that matter the same conflict its opinion creates with *Dalany. Sierra Club*'s analysis is therefore incomplete, and on that basis alone, unconvincing.[12]

In sum, we decline to follow *Sierra Club* and instead adhere to our previous interpretation of *Crowley* as explained in *Dalany* that severability analysis is improper in determining whether a malicious prosecution plaintiff has demonstrated favorable termination of an underlying lawsuit.[13] (*Dalany, supra,* 42 Cal.App.4th at p. 829.)

---

[12] We also note that it is solely *Sierra Club*'s dicta, not its holding, that is in conflict with *Dalany*. In *Sierra Club,* the court held that a plaintiff's settlement of a lawsuit with related claims did not preclude a finding of favorable termination with respect to *a different lawsuit* that was resolved in a separate proceeding in the plaintiff's favor. (*Sierra Club, supra,* 72 Cal.App.4th at p. 1152.) The unique scenario faced in *Sierra Club* is distinct from that at issue here—where a malicious prosecution plaintiff attempts to separate the causes of action contained in *the same lawsuit.*

[13] Apart from *Sierra Club,* the post-*Crowley* case law is in accord with this conclusion. (See *Casa Herrera, supra,* 32 Cal.4th at p. 341 ["To determine 'whether there was a favorable termination,' we 'look at the judgment as a whole in the prior action' "], quoting *Sagonowsky v. More* (1998) 64 Cal.App.4th 122, 129 [75 Cal.Rptr.2d 118] [relying on *Crowley* and *Dalany* for proposition that "[w]e are to look at the judgment as a whole in the prior action to test whether there was a favorable termination"]; *Hindin, supra,* 118 Cal.App.4th at p. 1258, fn. 7 [contrasting application of severability analysis in *Freidberg, Tabaz* and *Paramount General,* with *Crowley* which "question[ed]" the "propriety" of that analysis "for purposes of the favorable termination requirement of the law of malicious prosecution"].)

D

*StaffPro Failed to Demonstrate a Probability of Establishing*
*Favorable Termination of the Underlying Action*

Having determined that the court's decision in *Crowley* requires a rejection of the severability analysis argued by the parties, we next apply the alternate analysis laid out in *Crowley* to determine whether StaffPro has, on this record, established a probability of prevailing on the favorable termination element of its malicious prosecution action.

In criticizing the *Freidberg* court's severability analysis, the *Crowley* court outlined a much simpler analysis to be applied, stating that a plaintiff in a malicious prosecution must establish " 'a favorable termination of the *entire* [underlying] action' " and that the other elements of the tort, such as probable cause, will only be reached after " 'judgment ha[s] been reached in the plaintiff's favor in the prior action as a whole.' " (*Crowley, supra*, 8 Cal.4th at p. 686, quoting *Jenkins v. Pope* (1990) 217 Cal.App.3d 1292, 1300 [266 Cal.Rptr. 557] (*Jenkins*);[14] *Casa Herrera, supra*, 32 Cal.4th at p. 341 ["To determine 'whether there was a favorable termination,' we 'look at the judgment as a whole in the prior action' "].)

We applied these principles in *Dalany* to preclude a malicious prosecution claim where the plaintiff similarly attempted to separate the causes of action in the underlying action for purposes of establishing favorable termination. In *Dalany*, the plaintiff had obtained summary judgment on "some, but not all" of the causes of action alleged against him in an underlying suit brought by his former employer, and eventually settled the remainder (in addition to his own claims against the employer) in return for a payment of $105,000. (*Dalany, supra*, 42 Cal.App.4th at pp. 825–826.) Despite the settlement, in a subsequent malicious prosecution, Dalany contended that he could establish favorable termination by focusing solely on the causes of action for which he obtained summary judgment. Relying on *Crowley*, we disagreed, holding that "separate consideration" of the claims asserted in the underlying lawsuit was "not appropriate with respect to the element of favorable termination." (*Dalany*, at pp. 829–830, citing *Crowley, supra*, 8 Cal.4th at p. 686.) Instead,

---

[14] While the *Crowley* court drew the quoted language from *Jenkins, supra*, 217 Cal.App.3d 1292, a case that is distinguishable from the instant case, the high court adopted this language in the specific context we address here—the evaluation of the favorable termination element of a malicious prosecution tort where an underlying lawsuit contained multiple causes of action. The *Crowley* court also stated that *Freidberg*'s conclusion that favorable termination was not established was supported by the "sufficient ground" that the judgment in the underlying action resulted in a $12,900 damages award to the defendant in the malicious prosecution action. (*Crowley, supra*, 8 Cal.4th at p. 684.)

because *Crowley* required us to "consider the prior judgment 'as a whole,' " and not as separable components, we determined that Dalany's settlement of some of the claims against him created "ambiguity" as to his innocence, thus precluding the requisite showing of a " 'favorable termination of the *entire* action.' " (*Dalany*, at pp. 828–830 & fn. 2, quoting *Crowley*, at p. 686.)

Similarly, here, Elite's success in obtaining some relief on its first cause of action precludes a showing of favorable termination. The trial court's order in the underlying action required StaffPro to take remedial action with respect to many of the core allegations against it, and the order further states that a number of Elite's other requests for remedial action were rendered moot by StaffPro's voluntary compliance and/or regulatory developments. In light of this order, we must conclude that the resolution of the underlying action, viewed as a whole, " 'leaves some doubt as to [StaffPro's] innocence or liability' " and consequently " 'is *not* a favorable termination.' " (*Eells, supra,* 36 Cal.App.4th at p. 1855; *Murdock v. Gerth* (1944) 65 Cal.App.2d 170, 177–178 [150 P.2d 489] [termination not favorable to defendant even though "only a small part of the amount sued for" was recovered and on a different theory than that advanced because "[t]he fact remains that the judgment, framed upon the pleadings filed and the issues raised thereby, was not in favor of the defendant therein"], criticized on other grounds in *Sheldon Appel, supra,* 47 Cal.3d at p. 878, fn. 7; cf. *Padres L.P. v. Henderson* (2003) 114 Cal.App.4th 495, 514 [8 Cal.Rptr.3d 584] [dismissal based on mootness does "not constitute a favorable termination for purposes of a malicious prosecution action"].)[15]

■ In sum, we conclude that the judgment in the underlying action was partially in Elite's favor, precluding StaffPro from demonstrating the requisite favorable termination of the entire action. Consequently, we affirm the trial court's ruling on the section 425.16 motion, striking StaffPro's malicious prosecution cause of action. StaffPro failed to establish a probability of prevailing on the claim.

---

[15] Our conclusion is supported by analogous case law regarding the effect of a settlement on the favorable termination element of a subsequent malicious prosecution action. There is no question that had the result reached in the underlying litigation here—a requirement that StaffPro modify its future behavior—been reached as part of a settlement between the parties, it would preclude a subsequent finding of favorable termination. (*Ferreira, supra,* 87 Cal.App.4th at pp. 413–414; *Pender, supra,* 23 Cal.App.4th at p. 1817.) In our view, the vehicle by which termination occurs should not change the determination of whether that termination was "favorable." (*Brennan, supra,* 25 Cal.4th at p. 317 ["it is the *nature* of the termination that matters, not exactly how it came about or who agreed to it"]; cf. *Crowley, supra,* 8 Cal.4th at pp. 684–685 [it is " 'the decree or judgment itself in the former action [that] is the criterion by which to determine who was the successful party in such proceeding' "]; *Dalany, supra,* 42 Cal.App.4th at pp. 828–829 [holding that "[t]he ambiguity which arises when parties enter into a settlement is not resolved because instead of a dismissal the parties enter into a stipulated judgment"].)

## DISPOSITION

Affirmed.[16]

Benke, Acting P. J., and Huffman, J., concurred.

Appellants' petition for review by the Supreme Court was denied June 14, 2006, S142382.

---

[16] StaffPro's brief includes a one-sentence request that in addition to reversing the section 425.16 order we also reverse the trial court's·postjudgment orders requiring StaffPro to pay the attorney fees and costs of its opponents. StaffPro makes no separate argument as to those orders. (See *People v. Williams* (1997) 16 Cal.4th 153, 215 [66 Cal.Rptr.2d 123, 940 P.2d 710] [contentions " 'perfunctorily asserted without argument in support' " ·are not properly before appellate court].) Presumably, its contention is that the attorney fees order must be reversed along with the judgment as to the merits of the section 425.16 order. As we affirm the judgment with respect to the section 425.16 order, we consequently reject StaffPro's request to reverse the attorney fees and costs orders.