Filed 10/28/24  Dominguez v. Campana CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

|  |  |
|---|---|
| IVA DOMINGUEZ et al., | B332152 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. 23VECV00862) |
| v. | |
| WILLIAM CAMPANA, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Shirley K. Watkins, Judge.  Affirmed.

Law Offices of Dennis G. Geselowitz and Dennis G. Geselowitz for Plaintiffs and Appellants.

Law Offices of Steve Lopez and Steve Lopez for Defendant and Respondent.

_____

Plaintiffs and appellants Consuelo Saldana, Miguel Dominguez, and Iva Dominguez appeal from the trial court's granting of defendant and respondent William Campana's special motion to strike made under Code of Civil Procedure[1] section 425.16 (the anti-SLAPP statute).[2]

Appellants sued Respondent for malicious prosecution, elder abuse, and abuse of process. This lawsuit arose after Respondent prevailed in an underlying litigation where Respondent sued Appellants, to quiet title and partition a condominium. After a bench trial, the trial court entered judgment in favor of Respondent. The judgment was affirmed on appeal.

Because Appellants' causes of action each arose from Respondent's conduct in the underlying litigation, we conclude Respondent met his burden to show Appellants' claims arose from protected activity under section 425.16. We also conclude Appellants have not shown minimal merit on their claims because they base their allegations on Respondent's conduct in the underlying litigation, a case where Respondent prevailed. Accordingly, we find the trial court correctly granted Respondent's motion and affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.    The underlying litigation and appeal

This dispute between the parties originated in a prior litigation involving their respective ownership interests in a

---

[1]    All further undesignated statutory references are to the Code of Civil Procedure.

[2]    When necessary, we refer to the parties by their first names for clarity, intending no disrespect.

condominium.  After a bench trial in the prior litigation, the trial court entered an interlocutory judgment in favor of Respondent.  Another division of this court affirmed the interlocutory judgment.  (*Campana v. Saldana* (Mar. 5, 2024, B327132) [nonpub. opn.] (*Campana*).)  The following facts are taken from the factual and procedural background section of the opinion in the prior appeal.

"In July 2017, [Respondent] filed a complaint against Appellants asserting causes of action for partition of real property, accounting, partnership dissolution, constructive trust, common count, and breach of fiduciary duty.  Among other forms of relief, [Respondent] sought partition by sale, an accounting, compensatory and punitive damages, and dissolution of partnership.

"The complaint alleged that in 1993, [Respondent's] father, Mario Campana, bought a condominium (the Property) with Consuelo Saldana 'as an investment and under a verbal partnership agreement.'  The partnership agreement allowed either party to call for the sale of the Property.  In July 2013, Mario transferred his interest in the Property to [Respondent].  A few months later, Consuelo transferred her interest to her daughter, Iva, and her daughter's husband, Miguel.  About three years later, [Respondent] learned Appellants had not paid the property taxes or homeowners association fees.  [Respondent] told Appellants he wanted to sell the Property or have them purchase his interest, but they did not respond to his request.

"After litigating the case for a couple of years, [Respondent] moved for leave to file an amended complaint to clarify his partition cause of action, add a new cause of action for quiet title against Consuelo, and remove all other causes of action.  As to

3

the partition claim, [Respondent] asserted Mario and Consuelo had refinanced the Property in 1993, which he mistook for the original purchase. In fact, they had purchased the Property in 1987. Because of this error, [Respondent] sought to amend the complaint to change the purchase date from 1993 to 1987. Appellants opposed the motion, arguing the proposed amendments were barred under the sham pleading doctrine because they contradicted the allegations in the original complaint.

"The court granted [Respondent] leave to add a quiet title cause of action, but it denied the motion in all other respects. The court concluded the sham pleading doctrine precluded [Respondent] from amending his allegations regarding the purchase date. The court noted it could not determine whether [Respondent's] mistake about the purchase date was reasonable because he failed to produce a copy of the refinance agreement. As to [Respondent's] request to remove causes of action, the court stated it was unnecessary because [Respondent] could simply file a request for dismissal of any claims he no longer wished to pursue.

"[Respondent] filed an amended complaint that included all his prior claims plus a new claim for quiet title against Consuelo. The quiet title claim alleged Consuelo continued to claim an interest in the Property, despite having transferred her entire interest to Iva and Miguel. In relief, [Respondent] sought a declaration that only he, Iva, and Miguel had an interest in the Property. After filing the amended complaint, [Respondent] dismissed all his claims except those for partition and quiet title." (*Campana*, *supra*, B327132.)

4

"In April 2020, Appellants filed a cross-complaint against [Respondent], asserting a single cause of action for quiet title. . . . In relief, Appellants sought an order compelling [Respondent] to transfer his legal title to Appellants, a judgment enjoining [Respondent] from claiming any right to the Property, and a declaration that Appellants had the sole legal and equitable rights to the Property.

"Appellants' cross-complaint alleged that Iva is Mario and Consuelo's daughter from an affair they had while Mario was married to another woman. In 1987—when Iva was 16 years old—Mario agreed to help Consuelo buy the Property in lieu of providing past and future financial support. Mario and Consuelo were both named on the title to the Property. However, Consuelo owned the entire beneficial interest and Mario held his interest in trust for her. Mario agreed to transfer his interest to Consuelo once she paid off the mortgage. He also agreed the entire Property would eventually pass to Iva. Consuelo used the Property as her primary residence, and she paid off the mortgage in 1993. However, Mario refused to transfer title to her." (*Campana, supra*, B327132.)

"The parties tried their claims to the court over the course of six days. Iva testified her parents purchased the Property in 1987 for $68,000, with a $20,000 down payment. They paid off the original loan in 1993 and took out a second loan. Consuelo alone made payments on the loans.

"Iva testified Mario repeatedly promised to transfer his interest in the Property to her and Consuelo. Despite those promises, he never signed a transfer deed and would come up with some excuse for why he could not do so. Iva eventually

stopped believing Mario would keep his promise to transfer the Property to her.

"According to Iva, at some point, she and Consuelo learned that Mario had transferred his interest in the Property to [Respondent]. After learning of the transfer, Consuelo tried to transfer the entire Property to Iva and Miguel. A clerk told her that was not possible, so Consuelo instead deeded Iva and Miguel a one-half interest.

"Iva testified she and Miguel were living on the Property with Consuelo, who was 93 years old and suffering from dementia. Iva said Consuelo continued to claim an ownership interest in the Property, despite having deeded her interest to Iva and Miguel nearly a decade earlier.

"[Respondent] testified his father transferred to him a one-half interest in the Property in July 2013. Mario died about three years later. According to [Respondent], Mario said he had entered into a partnership agreement to purchase the Property as an investment, but he did not disclose his partner's name. Over time, Mario revealed more details about the agreement, including that Consuelo was his partner. Mario claimed he met Consuelo at church, and he wanted to help her out because she was pregnant and had no support. Mario said the agreement was that Consuelo would live in the Property rent free until her child turned 18 years old, and then Mario would exercise his option to sell his share or buy out Consuelo's share.

"[Respondent] testified he could not recall ever having met Consuelo. He met Iva once, at her wedding to Miguel in 2009. However, [Respondent] could not recall whether his father had told him Iva is his half-sister. [Respondent] is significantly older

6

than Iva; he graduated from high school the same year she was born.

"[Respondent] explained that, after his father's death, he learned Appellants were claiming an interest in the Property. He also discovered the property taxes had not been paid for several years. [Respondent] explained he was claiming an ownership interest in the Property under the transfer deed his father signed in 2013, rather than under a partnership agreement. [Respondent] wanted the Property partitioned, but he did not care whether it was partitioned by appraisal or by sale." (*Campana, supra,* B327132.)

"The court entered an interlocutory judgment for partition under Code of Civil Procedure section 872.720. The judgment declares [Respondent] owns a one-half interest in the Property, and Miguel and Iva each [owns] a one-quarter interest in the Property. The judgment orders the Property be sold, stating, 'Under the circumstances, the sale of the property and division of the proceeds would be more equitable than division of the property; the Court, therefore, orders that the property be sold and the proceeds divided among the parties according to their respective interests.' The court appointed a referee to sell the Property. The judgment also directs the Clerk of the Court to issue a writ of possession under . . . section 712.010 if [Respondent] applies for one." (*Campana, supra,* B327132.)

As directed in the interlocutory judgment, Respondent applied for a writ of possession.

## II. This litigation

While the first appeal was pending, Appellants filed this action against Respondent. The complaint alleged three causes of action for (1) malicious prosecution, (2) elder abuse in violation of

7

Welfare and Institutions Code section 15610.30, and (3) abuse of process. The allegations were based on Respondent's conduct in the first litigation. With respect to the malicious prosecution cause of action, Appellants alleged: Respondent sued Appellants without probable cause, alleging causes of action for an accounting, dissolution of partnership, constructive trust, common count, and breach of fiduciary duty. Respondent also requested compensatory, special and punitive or exemplary damages. The elder abuse cause of action was based on the allegations that Respondent "deliberately, falsely, and maliciously obtain[ed] property from, seeking to evict from her home, and inflict[ed] mental pain and suffering on, the elderly Consuelo Saldana, including by the financial abuse of the aforesaid malicious prosecution, . . . in violation of Welfare and Institutions Code 15610.30." The abuse of process cause of action was based on Respondent obtaining a writ of possession over Consuelo's home while a receivership was in place on February 21, 2023, which resulted in the Los Angeles County Sheriff serving a five-day notice to vacate on Appellants.

Respondent filed a special motion to strike under section 425.16, arguing each cause of action was based on Respondent's right of petition.

The trial court granted Respondent's motion. It found Respondent met his initial burden to show the allegations were grounded on his previous litigation, and therefore his right to free speech and petition as protected by section 425.16.

The trial court then turned to whether Appellants could show a reasonable probability of prevailing on the merits. The trial court found they could not. With respect to the malicious prosecution cause of action, the trial court found,

8

because Respondent voluntarily dismissed his causes of action for accounting, partnership dissolution, constructive trust, common count, and breach of fiduciary duty, but prevailed on the remaining partition and quiet title causes of action, Appellants could not show termination in their favor on the underlying action. The trial court further found because the appeal in the underlying litigation was still pending, Appellants could not demonstrate a favorable resolution on the merits. The trial court found the elder abuse cause of action was dependent on the malicious prosecution action; therefore, Appellants had not met their burden to show a reasonable probability of prevailing on the merits of that cause of action for the same reasons. Finally, the trial court found the Appellants could not demonstrate a reasonable probability of prevailing on the merits of their abuse of process cause of action because the interlocutory judgment expressly authorized Respondent to apply for a writ of possession.

Appellants appealed.

## DISCUSSION

### I. Governing law and standard of review

A strategic lawsuit against public participation (SLAPP) is a generally meritless civil lawsuit meant to chill the exercise of free speech or petition rights. (*Simpson Strong-Tie Co., Inc. v. Gore* (2010) 49 Cal.4th 12, 21 (*Simpson*).) The anti-SLAPP statute authorizes "the filing of a special motion to strike to expedite the early dismissal of these unmeritorious claims." (*Simpson*, at p. 21, citing § 425.16, subds. (b)(1), (f).) "To encourage 'continued participation in matters of public significance' and to ensure 'that this participation should not be chilled through abuse of the judicial process,' the Legislature

expressly provided that the anti-SLAPP statute 'shall be construed broadly.' " (*Ibid.*, citing § 425.16, subd. (a).)

"A special motion to strike involves a two-step process. First, the defendant must make a prima facie showing that the plaintiff's 'cause of action . . . aris[es] from' an act by the defendant 'in furtherance of the [defendant's] right of petition or free speech . . . in connection with a public issue.' [Citation.] If a defendant meets this threshold showing, the cause of action shall be stricken unless the plaintiff can establish 'a probability that the plaintiff will prevail on the claim.' " (*Simpson*, *supra*, 49 Cal.4th at p. 21, citing § 425.16, subd. (b)(1), fn. omitted.) The plaintiff must demonstrate its claims have at least " 'minimal merit.' " (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1061 (*Park*).)

"We review de novo the grant or denial of an anti-SLAPP motion. [Citation.] We exercise independent judgment in determining whether, based on our own review of the record, the challenged claims arise from protected activity. [Citations.] In addition to the pleadings, we may consider affidavits concerning the facts upon which liability is based. [Citations.] We do not, however, weigh the evidence, but accept the plaintiff's submissions as true and consider only whether any contrary evidence from the defendant establishes its entitlement to prevail as a matter of law." (*Park*, *supra*, 2 Cal.5th at p. 1067.)

## II. Respondent's activity arises from his right of petition

A defendant meets its burden to show a particular act arises from protected activity by "demonstrating that the act underlying the plaintiff's cause fits one of the categories spelled out in section 425.16, subdivision (e)." (*Navellier v. Sletten* (2002)

10

29 Cal.4th 82, 88.) These categories include: "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, (e).)

Here, Respondent has met his initial burden to prove the challenged claims arise from protected activity. Appellants' malicious prosecution and elder abuse causes of action allege that Respondent's underlying complaint lacked probable cause. In the underlying complaint, Respondent pursued causes of action for accounting, dissolution of partnership, constructive trust, common counts, breach of fiduciary duty, and punitive damages. Appellants' abuse of process cause of action is based on the claim that Respondent wrongfully sought a writ of possession causing a five-day notice to vacate the property while the property was in a receivership. Because these claims are based on Respondent's right to petition the courts to determine his ownership interest and rights to the property, they fall into section 425.16, subdivision (e)'s definition of protected activity. Further, Respondent's previous litigation qualifies as a written or oral statement made before or in connection with a judicial proceeding. (§ 425.16, subd. (e).) Therefore, the burden shifts to

11

Appellants to show a reasonable probability of prevailing on the merits.

**III.  Appellants have not shown their causes of action have at least minimal merit**

**A.  Malicious prosecution**

" ' "Malicious prosecution is a disfavored action. [Citations.]  This is due to the principles that favor open access to the courts for the redress of grievances." ' [Citation.]  '[T]he elements of the [malicious prosecution] tort have historically been carefully circumscribed so that litigants with potentially valid claims will not be deterred from bringing their claims to court by the prospect of a subsequent malicious prosecution claim.' [Citation.]  Three elements must be pleaded and proved to establish the tort of malicious prosecution:  (1) A lawsuit was ' " 'commenced by or at the direction of the defendant [which] was pursued to a legal termination in . . . plaintiff's . . . favor' " ';  (2) the prior lawsuit ' " ' was brought without probable cause' " ';  and (3) the prior lawsuit ' " 'was initiated with malice.' " ' " (*Daniels v. Robbins* (2010) 182 Cal.App.4th 204, 216.)

"To be considered 'favorable' for purposes of a malicious prosecution action, a termination in the underlying action 'must reflect the merits of the action *and the plaintiff's innocence* of the misconduct alleged in the lawsuit.' [Citations.]  'The key is whether the termination reflects on the underlying defendant's innocence.  [Citations.]  If the resolution of the underlying litigation "leaves some doubt as to the defendant's innocence or liability[, it] is *not* a favorable termination, and bars that party from bringing a malicious prosecution action against the underlying plaintiff." ' [Citation.]  Favorable termination 'is an essential element of the tort of malicious prosecution, and it is

12

strictly enforced.' " (*Staffpro, Inc. v. Elite Show Services, Inc.* (2006) 136 Cal.App.4th 1392, 1399–1400, fn. omitted.) " ' "[T]he criterion by which to determine which party was successful in the former action is the decree itself in that action. The court in the action for malicious prosecution will not make a separate investigation and retry each separate allegation without reference to the result of the previous suit as a whole." ' " (*Crowley v. Katleman* (1994) 8 Cal.4th 666, 684.)

Here, Appellants have not shown their malicious prosecution action has at least minimal merit because they cannot meet the first element—a favorable termination on the merits. When Appellants filed the complaint at issue here, Respondent had prevailed after a bench trial and the appeal of the interlocutory judgment was still pending. "[A] malicious prosecution action will not lie, and is deemed premature, *while* an appeal from the judgment in the underlying action is pending." (*Pasternack v. McCullough* (2015) 235 Cal.App.4th 1347, 1356.) Moreover, while this appeal was pending, the interlocutory judgment was affirmed in full by another division of this court. Therefore, Appellants cannot show their malicious prosecution cause of action has at least minimal merit.[3]

To the extent Appellants argue they can demonstrate at least minimal merit with respect to the causes of action in the underlying litigation that Respondent voluntarily dismissed, "separate consideration of prior theories of claims is not

_____

[3] At oral argument, Appellants represented they filed an appeal from the other division's decision to the United States Supreme Court. Regardless of the outcome of that appeal, it does alter our conclusion that the filing of the malicious prosecution action was premature.

13

appropriate with respect to the element of favorable termination." (*Dalany v. American Pacific Holding Corp.* (1996) 42 Cal.App.4th 822, 829.) In a malicious prosecution action, the plaintiff must demonstrate a " ' "favorable termination of the *entire* [underlying] action." ' " (*Staffpro, Inc. v. Elite Show Services, Inc.*, *supra*, 136 Cal.App.4th at p. 1405.) Here, despite voluntarily dismissing some of his causes of action, Respondent achieved a favorable termination of the entire action on the merits. This outcome precludes a showing that Appellants' malicious prosecution cause of action has at least minimal merit.

## B. Elder abuse

"The substantive law of elder abuse provides that financial abuse of an elder occurs when any person or entity takes, secretes, appropriates, or retains real or personal property of an elder adult to a wrongful use or with an intent to defraud, or both. A wrongful use is defined as taking, secreting, appropriating, or retaining property in bad faith. Bad faith occurs where the person or entity knew or should have known that the elder had the right to have the property transferred or made readily available to the elder or to his or her representative." (*Teselle v. McLoughlin* (2009) 173 Cal.App.4th 156, 174.)

Appellants' elder abuse cause of action essentially restates their cause of action for malicious prosecution. Appellants claim Respondent committed financial elder abuse because he sought to assert his ownership rights and determine his interest in the condominium that was the subject of the underlying litigation. However, Respondent prevailed at trial and the judgment was affirmed on appeal, entitling him to a 50 percent interest in the property with a right to partition. Consequently, Appellants will

14

not be able to show he wrongfully took or used the real property or acted in bad faith when he sued to enforce those rights. Therefore, Appellants cannot show their elder abuse cause of action has at least minimal merit.

## C.    Abuse of process

To establish a cause of action for abuse of process, a plaintiff must plead two essential elements:  that the defendant (1) entertained an ulterior motive in using the process and (2) committed a willful act in a wrongful manner.  (*Coleman v. Gulf Ins. Group* (1986) 41 Cal.3d 782, 792.)

Here, Appellants alleged Respondent committed an abuse of process by obtaining a writ of possession on the condominium. However, the interlocutory judgment expressly authorized Respondent to apply for a writ of possession.  (*Campana*, *supra*, B327132.)  Given this express language in the interlocutory judgment, Appellants will not be able to demonstrate Respondent entertained an ulterior motive in obtaining a writ of possession or that he acted in a wrongful manner.

## DISPOSITION

The judgment is affirmed.  Respondent is awarded his costs on appeal.

VIRAMONTES, J.


WE CONCUR:


STRATTON, P. J.            WILEY, J.

15