Filed 1/31/18

CERTIFIED FOR PARTIAL PUBLICATION[*]

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| JOHN LANE et al., | D071312 |
| Plaintiffs and Appellants, | |
| v. | (Super. Ct. No. 37-2013-00034878-CU-MC-CTL) |
| JOAN BELL et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of San Diego County, Gregory W. Pollack, Judge. Affirmed.

Veta & Veta and Ross Evan Veta for Plaintiffs and Appellants.

Suppa, Trucchi, and Henein and Samy S. Henein for Defendants and Respondents.

To prevail in a malicious prosecution action under California law, a malicious prosecution plaintiff (the defendant in the underlying action) must show that (1) the plaintiff in the underlying action pursued a claim with subjective malice, (2) the claim was brought without objective probable cause, and (3) the underlying action was terminated on the merits in favor of the defendant. The issue in this case is a seemingly

---

[*] Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of part B of the Discussion.

simple one. The plaintiff in the underlying action brought multiple claims and lost many, perhaps most of them, but prevailed on at least one. Can the defendant bring a malicious prosecution action by showing that some of the claims were malicious and lacked probable cause, but without showing a "favorable termination" of the *entire* underlying action?

In many respects, the answer likewise appears simple. In its most recent discussion of the issue, the California Supreme Court emphasized that "lack of probable cause" and "favorable termination" were distinct requirements in a malicious prosecution action: " '[T]hat a malicious prosecution suit may be maintained where only one of several claims in the prior action lacked probable cause [citation] does not alter the rule there must first be a favorable termination of the *entire* action.' " (*Crowley v. Katleman* (1994) 8 Cal.4th 666, 686 (*Crowley*).) Thus, if the defendant in the underlying action prevails on *all* of the plaintiff's claims, he or she may successfully sue for malicious prosecution if any one of those claims was subjectively malicious and objectively unreasonable. But if the underlying plaintiff succeeds on any of his or her claims, the favorable termination requirement is unsatisfied and the malicious prosecution action cannot be maintained.

In this case, John and Denise Lane jointly owned a piece of rural property together with Denise's mother, Joan Bell. In 2011, the Lanes filed a lawsuit (the property action) against Bell arising out of disputes over the property. (See *Lane v. Bell* (Jan. 8, 2015, D064651) __Cal.App.5th__ [2015 Cal.App. Unpub. Lexis 78] (*Lane I*).) Bell cross-complained, seeking among other things a declaration of the extent of her interest in the

2

property and an order for partition. The Lanes prevailed on most of Bell's claims, but a judgment was ultimately entered in Bell's favor valuing her interest in the property and granting her claim for partition. Because Bell prevailed on at least one of her claims, the seemingly simple answer—the conclusion reached by the trial court—is that the Lanes cannot demonstrate a "favorable termination" of the underlying action, which is fatal to their malicious prosecution action.

What appears to be simple becomes more complicated because the *Crowley* discussion is technically dicta; in *Crowley* there was no question that the underlying action in its entirety had terminated favorably to the defendant. (*Crowley*, *supra*, 8 Cal.4th at p. 676.) Further muddying the waters is a 60-year-old Supreme Court opinion relied on heavily by the Lanes—*Albertson v. Raboff* (1956) 46 Cal.2d 375 (*Albertson*)—which seems to hold that, at least in certain cases, a malicious prosecution plaintiff can satisfy the "favorable termination" element by succeeding on *some* causes of action in the underlying case, even though a partial judgment was entered *against* him or her on a different claim. (*Id.* at p. 382.) The Lanes thus suggest we should decline to apply the dicta of *Crowley* in favor of their reading of *Albertson*'s holding.

To do so, however, would require that we ignore two relatively recent decisions by this court that follow *Crowley* on this very point, albeit without recognizing the potential conflict with *Albertson*. More importantly, the rule urged by the Lanes would conflate two separate elements in a malicious prosecution claim, effectively eliminating any requirement that the *entire* underlying action terminate in the defendant's favor.

In the absence of further guidance from the Supreme Court, we believe *Crowley* correctly addresses the issue, and the trial court properly relied on *Crowley* in granting summary judgment.  Accordingly, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

1.      *The Underlying Dispute and the Property Action*

In 1987, John Lane acquired the property and ultimately conveyed an undivided one-half interest to Bell.  Concurrently with that transfer, the Lanes and Bell entered into a Joint Venture Agreement (JVA) defining the parties' anticipated rights and responsibilities.  Under the JVA, the parties would seek approval for a lot split which, if successful, would leave Bell with the upper lot and the Lanes with the lower lot.  The Lanes were responsible for processing the lot split application, and the parties would equally divide the associated costs and common expenses for the land.  The parties also agreed that if the lot split was denied, each would have a right of first refusal to purchase the other's interest in the land.

Bell moved onto the upper lot in 1989 and lived on the land in a recreational vehicle through 2010.  Although they did everything required of them under the JVA, the Lanes were ultimately unable to accomplish a lot split because of intervening legislation.  They also failed to obtain county approval for a "granny flat" for Bell—with a separate kitchen—attached to the vacation home they were preparing to build on the property.

Shortly thereafter, Bell sought the help of a friend, Jerry Michael Suppa, who was of counsel to a law firm that ultimately represented Bell in the property action.  Suppa told John Lane that Bell was entitled to the house and wanted a quarter of a million

4

dollars. He threatened Lane with elder abuse charges and financial ruin if he did not capitulate.

Meanwhile, based on a revised set of plans, the Lanes began construction of a home without a granny flat. By late October 2010, the residence had been sufficiently completed to permit the Lanes to obtain a certificate of occupancy. During this same period, the parties negotiated a buy-out agreement under which they would dissolve the JVA, hire an appraiser to value the land, and have the Lanes purchase Bell's interest. When negotiations on the buy-out stalled, the Lanes filed the property action against Bell. They alleged claims for breach of contract, negligent misrepresentation, breach of the promissory note, and three causes of action seeking to quiet their title as against Bell's claims. In response, Bell filed her cross-complaint, upon which the Lanes' current action for malicious prosecution is predicated, which alleged claims for breach of contract, violation of the implied covenant of good faith, elder abuse, fraud, intentional infliction of emotional distress, and declaratory relief/partition.

At trial in the property action, the claims raised by Bell's cross-complaint against the Lanes resulted in a judgment granting some of the relief sought by Bell. On Bell's claim for declaratory relief/partition, the court concluded that Bell and the Lanes each had an interest in the property; it valued Bell's gross share in the property at $177,500 and the Lanes' gross share at $382,500. Granting Bell's claim for partition, the court

5

determined her net share[1] to be $44,787, and ordered that the Lanes had the right to acquire Bell's interest in the property upon payment to her of that amount. The Lanes prevailed on all of the remaining claims in Bell's cross-complaint, including her causes of action for elder abuse and intentional infliction of emotional distress.[2]

   2.    *The Malicious Prosecution Action*

Following judgment in the property action, the Lanes filed this action for malicious prosecution based on the portion of Bell's cross-complaint that asserted claims for elder abuse and intentional infliction of emotional distress. Bell initially defended by moving to strike the complaint pursuant to the anti-SLAPP (Strategic Lawsuit Against Public Participation) statute (Code Civ. Proc., § 425.16), but the trial court denied the motion and this court in *Lane I* affirmed that order on appeal. Bell thereafter moved for summary judgment, asserting (among other things) that under the rationale of this court's decision in *StaffPro, Inc. v. Elite Show Services, Inc.* (2006) 136 Cal.App.4th 1392 (*StaffPro*) the Lanes could not demonstrate the "favorable termination" element for a malicious prosecution claim. In this regard, Bell contended the Lanes were required to

---

[1]    The court's judgment calculated Bell's net share by subtracting from Bell's share (1) the $25,000 already paid to Bell by the Lanes, and (2) the amount owed by Bell to the Lanes under the jury's award of $40,753.80 on the Lanes' cause of action against Bell for breach of the JVA. It rejected the Lanes' remaining equitable causes of action against Bell insofar as they sought to declare void the deed which granted Bell an interest in the property and to cancel that deed.

[2]    Bell's claims of elder abuse and intentional infliction of emotional distress were resolved when the court granted the Lanes' nonsuit motion. Bell's remaining claims against the Lanes (for fraud, breach of contract, and breach of the implied covenant of good faith and fair dealing) were resolved against Bell by the jury's special verdict on those claims.

6

show they prevailed on *all*—and not just some—of the claims asserted against them. Because Bell prevailed on her causes of action for declaratory relief and partition, she urged that the property action did not terminate in favor of the Lanes. Opposing the motion, the Lanes argued it was sufficient that they prevailed on a discreet portion of the underlying action.[3]

The trial court granted Bell's motion for summary judgment. It noted that the judgment in the property action showed Bell prevailed on part of her cross-complaint (as well as on many claims interposed by the Lanes' complaint). Under *StaffPro*, Bell's partial success precluded the Lanes from establishing "favorable termination" of the underlying action.

---

[3]     Although the Lanes conceded below that Supreme Court cases including *Crowley*, *supra*, 8 Cal.4th 666 and *Casa Herrera, Inc. v. Beydoun* (2004) 32 Cal.4th 336 (*Casa Herrera*) required assessment of the "favorable termination" element by examining the judgment as a whole, their opposition contained no analysis of *StaffPro.*

DISCUSSION

A claim for malicious prosecution requires that the plaintiff demonstrate (1) the defendant brought (or continued to pursue) a claim in the underlying action without objective probable cause, (2) the claim was pursued by the defendant with subjective malice, and (3) the underlying action was ultimately resolved in the plaintiff's favor. (*Sycamore Ridge Apartments, LLC v. Naumann* (2007) 157 Cal.App.4th 1385, 1398.) A plaintiff must establish all three elements. (*Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d 863, 871–872 (*Sheldon Appel*).) If the defendant's summary judgment motion conclusively negates any one of the elements, the motion is properly granted. (*Tool Research & Engineering Corp. v. Henigson* (1975) 46 Cal.App.3d 675, 678, disapproved on other grounds in *Sheldon Appel*, at p. 883, fn. 9.) Here, the trial court granted Bell's motion for summary judgment because it determined that the judgment in the underlying action precluded the Lanes from establishing "favorable termination" of that action.

A.      *Favorable Termination*

"Favorable termination . . . is an essential element of the tort of malicious prosecution, and it is strictly enforced." (*Ferreira v. Gray, Cary, Ware & Freidenrich* (2001) 87 Cal.App.4th 409, 413.) Noting that " 'the theory underlying the requirement of favorable termination is that it tends to indicate the innocence of the accused,' " the Supreme Court in *Casa Herrera* expressly stated that "[t]o determine 'whether there was a favorable termination,' we '*look at the judgment as a whole in the prior action*.' " (*Casa Herrera, supra*, 32 Cal.4th at p. 341, italics added.) The basic question presented here is whether a *partial* victory by the malicious prosecution plaintiff in the underlying action

8

can satisfy the favorable termination element where the malicious prosecution defendant *also* obtained a partial victory in the underlying action.

As previously noted, this issue is framed by two Supreme Court cases decided nearly 40 years apart—*Crowley*, *supra*, 8 Cal.4th 666 and *Albertson*, *supra*, 46 Cal.2d 375. Yet even before *Albertson* was decided in 1956, it was well settled that the "favorable termination" element in a malicious prosecution action required an assessment of the judgment as a whole in the prior action. In *Murdock v. Gerth* (1944) 65 Cal.App.2d 170 (*Murdock*), the underlying plaintiff (Wolf) sued the underlying defendant (Murdock) to collect the entire balance due on the original contract, which assertedly obligated Murdock to purchase a business. Murdock claimed the original contract had been superseded by a later agreement placing more limited obligations on him. The judgment in the underlying action found in favor of Murdock as to Wolf's claim on the original contract, but awarded Wolf a small recovery against Murdock for the unpaid amount due under the later superseding agreement. Murdock then sued Wolf's attorney for maliciously prosecuting the underlying claim on the original contract, and the trial court found for Murdock on his malicious prosecution claim. (*Id.* at pp. 174–177.) The appellate court reversed the judgment based in part on its conclusion that the favorable termination element was absent. It explained that "in determining whether a proceeding alleged to have been maliciously prosecuted has been terminated in favor of the party injured by such proceeding, consideration should be given to the judgment as a whole." (*Id.* at p. 177.) It is the "judgment itself" in the prior action that is "the criterion by which to determine who was the successful party in such proceeding." (*Ibid.*) Because the

9

judgment as a whole showed the underlying plaintiff had been awarded a partial recovery, even though it was "[t]rue [the recovery] was only a small part of the amount sued for," the action did not terminate in favor of the defendant. (*Ibid.*)

Decided 12 years after *Murdock*, *Albertson*'s discussion of the favorable termination requirement arose in an unusual context. The underlying action filed by Raboff against Albertson pleaded two claims. Raboff sought (1) a money judgment on a debt owed to him, and (2) a lien on real property allegedly pledged by the original debtor to secure the debt or, in the alternative, a declaration that the transfer of the property by the original debtor to Albertson was a transfer in fraud of creditors. Raboff filed a lis pendens in connection with the latter claims. Although Raboff prevailed on the first claim to collect on the debt, Albertson defeated the lien claim and subsequently sued Raboff alleging disparagement of title based on the recording of the lis pendens. (*Albertson*, *supra*, 46 Cal.2d at pp. 377–378.) The Supreme Court's principal concerns were: (1) whether Albertson's complaint alleging disparagement of title based on the recording of a lis pendens could properly plead a claim based on an act that was subject to the absolute privilege under Civil Code section 47 (*id.* at pp. 378–382); and (2) if not, could the complaint nevertheless be construed as asserting a claim for malicious prosecution, which is *not* subject to the absolute privilege (*id.* at pp. 382–385).

Before addressing those issues, the court first considered Raboff's argument that Albertson's malicious prosecution complaint was premature because, at the time it was filed, there was still an appeal pending from the underlying judgment. *Albertson* rejected that argument because the appeal challenged only the money judgment in favor of

10

Raboff. "That part of the judgment was severable from the part that determined that [Raboff] had no interest in or right to a lien upon plaintiff's real property. No appeal was taken from the latter part of the judgment, and it became final. . . . [Citations.] Plaintiff's complaint herein was filed after the time for appeal had expired and was therefore not premature." (*Albertson*, *supra*, 46 Cal.2d at p. 378.)

Having disposed of the preliminary matter, *Albertson* turned to the two principal questions in the case. As to the first, the court concluded that the pleaded claim (disparagement of title based on the lis pendens) *was* subject to the absolute privilege. The opinion then examined whether the complaint, although not stating a valid disparagement of title claim, might nonetheless adequately allege the elements of a malicious prosecution claim. Although the court's malicious prosecution discussion extensively examined the "probable cause" and "malice" elements, its sole evaluation of the "favorable termination" element was its peremptory statement that "[*a*]*s indicated above*, that part of the judgment in the former action that determined that [Raboff] had no interest in or a right to a lien upon [Albertson's] real property is now final and constitutes a termination of that separable part of the proceeding favorable to [Albertson]." (*Albertson*, *supra*, 46 Cal.2d at p. 382, italics added.) Thus, while *Albertson* involved a malicious prosecution claim in which the underlying defendant was only partly successful, its "severability rule" contained no discussion or disapproval of the general principal that the favorable termination assessment requires "consideration [] be given to the judgment as a whole." (*Murdock*, *supra*, 65 Cal.App.2d at p. 177.) It was instead derived from the court's earlier analysis of whether the judgment on a cause of action

11

from which no cross-appeal had been filed was a final judgment for purposes of a malicious prosecution action.

Roughly 20 years later, *Albertson* was relied on by the Supreme Court for its discussion of the probable cause requirement. In *Bertero v. National General Corp.* (1974) 13 Cal.3d 43 (*Bertero*), the court reaffirmed and extended *Albertson*'s holding in concluding it is sufficient if a malicious prosecution plaintiff can establish that one of multiple theories in the underlying action was objectively unreasonable. (*Id.* at p. 57.) *Bertero* presented no issue as to favorable termination because the entire underlying action was resolved in favor of the malicious prosecution plaintiff.

The Supreme Court considered the favorable termination requirement again in *Crowley*, *supra*, 8 Cal.4th 666. In the intervening 40 years between *Albertson* and *Crowley*, two distinct lines of cases had developed in the Court of Appeal. One continued to follow the *Murdock* rule that the favorable termination requirement applies to the underlying plaintiff's claims *in their collective entirety*. Under this rule, it is not sufficient that the defendant in the underlying action prevailed on some or most of the claims. (See *Freidberg v. Cox* (1987) 197 Cal.App.3d 381, 387 (*Freidberg*); *Jenkins v. Pope* (1990) 217 Cal.App.3d 1292, 1298–1300 (*Jenkins*).) But another line of cases read *Albertson* as creating a new rule that would allow a malicious prosecution action for a partially successful underlying defendant so long as the claims on which the defendant prevailed were "severable." (See *Paramount General Hospital Co. v. Jay* (1989) 213 Cal.App.3d 360, 368–370 (*Paramount General*); *Tabaz v. Cal Fed Finance* (1994) 27 Cal.App.4th 789, 792–794 (*Tabaz*).)

12

*Crowley* addressed the distinct issue of whether, for purposes of determining the lack of probable cause element, each theory asserted in the underlying action must be separately supported by probable cause or whether the existence of probable cause for *any* of the underlying claims bars a later action for malicious prosecution. The underlying plaintiff (Katleman) filed a will contest against Crowley seeking to invalidate a will favoring him. Katleman's complaint alleged six different grounds (including undue influence by Crowley) to contest the will; the probate court ultimately rejected all six challenges. (*Crowley*, *supra*, 8 Cal.4th at pp. 673–674.) In Crowley's subsequent malicious prosecution action against Katleman, he asserted that five of the six grounds (i.e., every ground except undue influence) were prosecuted maliciously and without probable cause. The *Crowley* court rejected Katleman's argument that the malicious prosecution action was properly dismissed because one of her theories (undue influence) was supported by probable cause. Reaffirming its previous ruling in *Bertero*, *supra*, 13 Cal.3d 43, the Supreme Court concluded that on the probable cause element issue " 'a malicious prosecution suit may be maintained where only one of several claims in the prior action lacked probable cause.' " (*Crowley*, *supra*, at p. 686.)

In *Crowley*, the underlying plaintiff recovered nothing on any claim. Thus, the court was not directly presented with the issue of whether a partial recovery by the underlying plaintiff would be fatal to a showing of the favorable termination element in the subsequent malicious prosecution action. However, the Supreme Court's opinion is hardly silent on the issue. Katleman sought to rely on *Freidberg*, *supra*, 197 Cal.App.3d 381—a favorable termination case—to buttress her argument that probable cause for any

one theory supporting a single primary right should bar a subsequent malicious prosecution action. (*Crowley*, *supra*, 8 Cal.App.4th at pp. 683–684.) In rejecting Katleman's attempt to export *Freidberg*'s "favorable termination" analysis into the "probable cause" arena, *Crowley* stated that the only issue in the *Freidberg* case "was whether the [underlying] action had terminated favorably to Freidberg, as required to support a malicious prosecution claim. [Citation.] The issue was not difficult: on its face the action had evidently not terminated favorably to Freidberg, because the judgment assessed substantial damages against him." (*Id.* at p. 684.)

The Supreme Court dismissed the argument that if some *recovery* in the underlying proceeding bars a later malicious prosecution action then some *probable cause* in the underlying proceeding (even without any recovery) should *also* bar a later malicious prosecution:

> "*Freidberg* was not a probable cause case but a favorable termination case. Prior opinions have stressed that the two elements of the tort serve different purposes: '[Plaintiff] confuses the elements of probable cause and favorable termination. Whether a prior action was legally tenable goes to the issue of probable cause, that is, did the defendant have an honest and reasonable belief in the truth of the allegations. [Citation.] Whether a prior action was terminated favorably tends to show the innocence of the defendant in the prior action [citations], and is not affected by the objective tenability of the claim. In short, these two elements of the malicious prosecution tort serve different purposes, and the legal tenability of the underlying action is not the standard by which to judge whether the action was terminated in [plaintiff's] favor.' " (*Crowley*, *supra*, 8 Cal.4th at p. 686, quoting *Warren v. Wasserman, Comden & Casselman* (1990) 220 Cal.App.3d 1297, 1303.)

*Crowley* then quotes with approval from the Court of Appeal decision in *Jenkins*, *supra*, 217 Cal.App.3d at p. 1300: " '[T]he Supreme Court's [*Bertero*] holding that a malicious

14

prosecution suit may be maintained where only one of several claims in the prior action lacked probable cause (*Bertero* [], *supra,* 13 Cal.3d at pp. 55–57) does not alter the rule there must first be a favorable termination of the *entire* action.  (*Freidberg* [], *supra*, 197 Cal.App.3d at pp. 386–387.)  In *Bertero*, the question whether all or only part of the prior action had to be without probable cause arose only after judgment had been reached in the plaintiff's favor in the prior action as a whole.' "  (*Crowley*, at p. 686.)

*Crowley* did advert to cryptic language in *Albertson* from which the *Paramount General/Tabaz* line of cases emerged, but only in the context of indicating how *Freidberg* unnecessarily strayed when it employed the "primary right theory . . . in order to distinguish [*Albertson*], [because] *Albertson* was distinguishable on other grounds." (*Crowley*, *supra*, 8 Cal.4th at p. 685.)  *Crowley* explained that the discussion in *Albertson* regarding severability was primarily directed at rejecting the contention that the malicious prosecution complaint was premature because an appeal was still pending.  But the court acknowledged what it characterized as a "holding" in *Albertson* that the malicious prosecution complaint in that case met the favorable termination requirement: "[W]e said simply that 'As indicated above, that part of the judgment in the former action that determined that defendant had no interest in or a right to a lien upon plaintiff's real property is now final and constitutes a termination of that separable part of the proceeding favorable to plaintiff.' ([*Albertson*, *supra*, 46 Cal.2d at p. 382.])  Because there was no such partial appeal from the judgment in *Freidberg*, the *Freidberg* court could have distinguished *Albertson* on that ground alone."  (*Crowley*, at p. 685.)

15

Since *Crowley* was decided, this court on two occasions has discussed the favorable termination requirement in the context of an underlying defendant's partial success. In both cases, we relied on *Crowley* in concluding that the *entire* action must terminate in the defendant's favor in order to support a later claim for malicious prosecution.

In *Dalany v. American Pacific Holding Corporation*, 42 Cal.App.4th 822 (*Dalany*), we examined whether the favorable termination element had been satisfied when the underlying cross-defendant (Dalany) had prevailed (by obtaining summary adjudication in his favor) on some *but not all* of the underlying claims asserted against him by the underlying cross-complainant, American Pacific Holding Corporation (APHC). While Dalany prevailed on some claims, the remainder of the underlying claims asserted by APHC's cross-complaint (together with Dalany's affirmative claims against APHC) were disposed of by a global settlement. Dalany subsequently sued APHC for maliciously prosecuting its cross-complaint against him. (*Id.* at pp. 825–826.) Noting that settlement of the remaining claims precluded Dalany from showing the "favorable termination" element as to those claims, this court dismissed Dalany's argument that he could sue for malicious prosecution of those claims upon which he prevailed by summary adjudication. (*Id.* at pp. 827–828.) Relying on *Crowley* but without discussing *Albertson*, we "reject[ed] Dalany's suggestion that his success in achieving summary adjudication as to some of the causes of action in the cross-complaint prior to entry of the stipulated judgment gave rise to a favorable termination. . . . The Supreme Court has recently emphasized that although for purposes of determining

16

probable cause each theory asserted in a prior action must be separately considered, separate consideration of prior theories of claims is not appropriate with respect to the element of favorable termination." (*Dalany*, *supra*, at p. 829, citing *Crowley*, *supra*, 8 Cal.4th at p. 686.)

In *StaffPro*, *supra*, 136 Cal.App.4th 1392, this court was confronted with and required to resolve the tension between the *Tabaz/Paramount General* line of cases (which applied "a severability analysis to determine the favorable termination element") and the contrary authority, represented by such cases as *Crowley*, *Freidberg*, and *Jenkins* (which suggested that the underlying defendant needed to prevail on the entire underlying action in order to establish favorable termination). (*StaffPro,* at pp. 1394, 1402–1404.) In *StaffPro*, the underlying action by the plaintiff (Elite) alleged three causes of action against StaffPro: unfair business practices (Bus. & Prof. Code, § 17200), offering below-cost services (*id.*, § 17043), and intentional interference with prospective business advantage by improperly underbidding Elite on a number of specifically enumerated contracts. (*StaffPro*, at p. 1395.) Elite dismissed the third claim prior to trial and, at trial, the court granted StaffPro's motion for judgment under Code of Civil Procedure section 631.8, subdivision (a) as to the second cause of action. However, Elite prevailed on its first claim and obtained injunctive relief. (*StaffPro*, at p. 1396.) StaffPro then filed a malicious prosecution action, claiming that its partial victory in the underlying action satisfied the favorable termination element. It argued that "the favorable termination element of the malicious prosecution tort must be determined with respect to each 'severable' cause of action, and that Elite's second and third causes of action, which

17

terminated in StaffPro's favor, are severable from the first." (*Id.* at p. 1402.) The

*StaffPro* opinion, building on this court's earlier *Dalany* decision, rejected that argument

because, under *Crowley,* "a plaintiff in a malicious prosecution must establish ' "a

favorable termination of the *entire* [underlying] action." ' " (*Id.* at p. 1406.)[4]

Both *StaffPro* and *Dalany* construed *Crowley*'s discussion as declaring that, while

the absence of probable cause element supports a malicious prosecution claim if any of

the underlying claims were prosecuted without probable cause, that analysis is only

conducted " 'after judgment had been reached in the plaintiff's favor in the prior action as

a whole.' " (*Dalany*, *supra*, 42 Cal.App.4th at pp. 829–830.)  Thus, where the underlying

defendant did not prevail on *every* claim asserted in the underlying action, either because

the judgment awarded affirmative relief to the underlying plaintiff (as in *StaffPro* and this

case) or because some claims by the underlying plaintiff were resolved by a settlement

(as in *Dalany*), that " 'reflects ambiguously on the merits of the action . . . thus leaving

open the question of defendant's guilt or innocence.' "  (*Dalany*, at p. 827, quoting *Pender

v. Radin* (1994) 23 Cal.App.4th 1807, 1814.)  Both decisions explain that under *Crowley*,

the favorable termination cannot be shown and summary judgment in favor of the

defendant would be proper.  (*Dalany*, at p. 830; *StaffPro*, *supra*, 136 Cal.App.4th at

pp. 1406–1408.)  *StaffPro* takes the added step of expressly rejecting a severability

---

4       *StaffPro* acknowledged the favorable termination analysis in *Crowley* was
arguably dictum because it was not required for the decision in that case, but nevertheless
concluded the dictum "carries persuasive weight and should be followed where it
demonstrates a thorough analysis of the issue or reflects compelling logic." (*StaffPro*,
*supra*, 136 Cal.App.4th at p. 1403, fn. 9.)

analysis and concluding that Court of Appeal cases following that approach have been abrogated sub silencio by *Crowley*. (*StaffPro*, at pp. 1402–1405 & fn. 11.)

What *StaffPro* did not confront directly was the potential conflict between the logic of *Crowley* and the Supreme Court's earlier decision in *Albertson*. The Lanes argue we should decline to follow *StaffPro* in favor of the binding precedent and more "analogous" approach represented by *Albertson*.[5] They contend that under *Albertson*, a favorable result on "severable" claims can satisfy the favorable termination element notwithstanding an unfavorable outcome on other claims resulting in an adverse judgment.[6]

We are satisfied, however, that *StaffPro* correctly construed *Crowley* as requiring that a malicious prosecution plaintiff show "there [was] a favorable termination of the

---

[5]    The Lanes assert the more "analogous" case of *Albertson* "was specifically approved by *StaffPro*" and therefore implicitly argue that *Albertson*'s severability analysis can coexist with *StaffPro*'s analysis of the favorable termination requirement. However, the Lanes do not identify where the *StaffPro* court "specifically approved" *Albertson*, nor can we find any reference to *Albertson* in *StaffPro*. Nor can the Lanes reconcile their argument with *StaffPro*'s express recognition that the "severability analysis is improper in determining whether a malicious prosecution plaintiff has demonstrated favorable termination of an underlying lawsuit." (*StaffPro*, *supra*, 136 Cal.App.4th at p. 1405.)

[6]    The Lanes also cite a post-*Crowley* decision, *Franklin Mint Company v. Manatt, Phelps & Phillips, LLP* (2010) 184 Cal.App.4th 313, 333 (*Franklin Mint*), where the court stated that "[a] claim for malicious prosecution need not be addressed to an entire lawsuit; it may . . . be based upon only some of the causes of action alleged in the underlying lawsuit." However, in *Franklin Mint* the malicious prosecution plaintiff had prevailed on *all* of the five claims asserted in the underlying lawsuit (*id.* at pp. 325–329), but claimed in its malicious prosecution action that only two of those claims were brought without probable cause. (*Id.* at p. 330.) Nothing in *Franklin Mint* suggested any different approach than was approved in *Crowley*.

19

*entire* [underlying] action" in the plaintiff's favor (*Jenkins*, *supra*, 217 Cal.App.3d at p. 1300), and that a partial recovery against the malicious prosecution plaintiff in the underlying action is fatal to showing the favorable termination element. (Accord, *Murdock*, *supra*, 65 Cal.App.2d at p. 177; *Freidberg*, *supra*, 197 Cal.App.3d at pp. 386–387.) Any other rule would strip the "favorable termination" requirement of its independent significance because any individual "claim" that lacks probable cause will necessarily be terminated in the underlying defendant's favor.

Indeed, *Crowley* specifically approved *Freidberg*'s conclusion there was *no* favorable termination under the facts of *Freidberg* even though the underlying plaintiff in that case did not prevail on his contract claim (which sought $43,000 plus punitive damages) or on a tort claim (seeking a similar amount) and instead only partially prevailed on a common count by obtaining a $12,900 recovery. (*Freidberg*, *supra*, 197 Cal.App.3d at pp. 383–384.) According to the Supreme Court, the favorable termination issue in *Freidberg* "was not difficult: on its face the action had evidently not terminated favorably to Freidberg, because the judgment assessed substantial damages against him." (*Crowley*, *supra*, 8 Cal.4th at p. 684.) The issue in this case is no more difficult.

While *Crowley*'s general discussion of the favorable termination element, as well as its specific observations on the absence of favorable termination under the facts of *Freidberg*, support *StaffPro*'s construction of the favorable termination element, *Crowley* did leave some vestigial uncertainty (which the Lanes seize upon in this appeal) by failing to specifically disapprove *Albertson*'s cryptic discussion of the favorable termination requirement. (*Albertson*, *supra*, 46 Cal.2d at p. 382.) This is the language

20

from which *Paramount General* and *Tabaz* derived a so-called "severability rule" that would allow prosecution of a malicious prosecution claim based on partial success in the underlying action if the claims on which the defendant prevailed were in some sense severable. (See *Paramount General*, *supra*, 213 Cal.App.3d at pp. 368–371; *Tabaz*, *supra*, 27 Cal.App.4th at pp. 792–793.)

But *Crowley* itself makes clear that *Albertson*'s comments on the favorable termination requirement apply, at most, in situations where a partial appeal has created a severable judgment. (8 Cal.4th at p. 685.) We have no partial appeal in this case. That is enough for us to conclude that the underlying property action did not terminate favorably to the Lanes.

And although *Crowley* did not expressly overrule *Albertson* in this respect, we question if any part of the so-called "severability" analysis survives. A partially unsuccessful defendant's ability to maintain an action for malicious prosecution should not turn on the fortuity of whether both parties or only one party elect(s) to pursue an appeal from the initial judgment. *Crowley*'s overarching conclusion (as explained by *StaffPro*) was that severable consideration of the issue of lack of probable cause " 'does not alter the rule there must first be a favorable termination of the *entire* action [citing *Freidberg*],' " (*Crowley*, *supra*, 8 Cal.4th at p. 686, quoting *Jenkins*, *supra*, 217 Cal.App.3d at p. 1300), which appears inherently inconsistent with *Albertson*'s "severability-for-purposes-of-favorable-termination" approach. In our view, the logic of *Crowley*—if not its explicit language—has overruled this aspect of *Albertson*.

21

Because we are satisfied *StaffPro* properly construed *Crowley*, we agree with the trial court that the Lanes cannot establish the essential element of favorable termination because the entire underlying action was not terminated in the Lanes' favor. To the contrary, the undisputed material facts showed the judgment granted some of the relief sought by Bell in her cross-complaint. On Bell's claim for declaratory relief/partition, the court determined (contrary to the Lanes' claims asserted in their complaint[7]) that Bell *did* have an interest in the property and valued her gross share in the property at $177,500. The court thus granted her claim for partition with an order that the Lanes had the right to acquire her interest in the property upon payment to Bell of the net share of her interest in the property. Under these circumstances, the Lanes cannot demonstrate the favorable termination element because the single judgment on Bell's cross-complaint, while partially in the Lanes' favor, was also partially in favor of Bell.

B.     *Law of the Case*

The Lanes alternatively assert, for the first time on appeal that because this court ruled in *Lane I* that Bell's anti-SLAPP motion directed at their malicious prosecution

---

[7]     The Lanes' complaint the property action included equitable causes seeking to declare void the deed which granted Bell an interest in the property and to cancel that deed. The court, having found for Bell on her declaratory relief cause of action, necessarily rejected the Lanes' competing causes of action as part of its judgment.

complaint was properly denied, *Lane I* should be law of the case and should have prevented entry of summary judgment against them.[8]

Law of the case is a doctrine of procedure founded upon the concepts of judicial economy and finality of court rulings. (*George Arakelian Farms, Inc. v. Agricultural Labor Relations Board* (1989) 49 Cal.3d 1279, 1281 (*George Arakelian Farms*); *Searle v. Allstate Life Ins. Co.* (1985) 38 Cal.3d 425, 435.) Under the law-of-the-case doctrine, where an appellate court states in its opinion a principle of law necessary to the decision, that principle becomes law of the case and should be adhered to in all subsequent proceedings in that case, including appeals. (*People v. Stanley* (1995) 10 Cal.4th 764, 786.) However, application of the rule is not invariable and is subject to a number of qualifications, including when there has been an intervening change in the law (*George Arakelian Farms*, at p. 1291) or where "the disputed issue was not presented or considered in the proceedings below, or [] application of the doctrine would result in a manifest injustice." (*Ibid.*; accord, *People v. Shuey* (1975) 13 Cal.3d 835, 842 [noting application of law of the case requires " 'the point of law involved . . . must have been actually presented and determined by the court, and . . . application of the doctrine will not result in an unjust decision.' "].)

---

8    The Lanes also claim the opinion in *Lane I* is binding under res judicata principles. However, res judicata requires, among other things, that a prior *case* involving the same claim resulted in a final judgment on the merits. (See, e.g., *Victa v. Merle Norman Cosmetics, Inc.* (1993) 19 Cal.App.4th 454, 459.) The Lanes cite nothing to suggest res judicata principles have any application to an appellate disposition of an appeal or an interim ruling in the *same* case, and we do not further consider that argument.

23

The Lanes assert that because this court in *Lane I* stated there was some evidence

from which a trier of fact could find the "favorable termination" element had been met,

that ruling was binding and precluded summary judgment here.[9]  Under some

circumstances, it might be appropriate to apply law of the case principles to a prior

appellate decision affirming denial of an anti-SLAPP motion when the same issues are

resurrected by a defendant's motion for summary judgment.  (See, e.g., *Bergman v. Drum*

(2005) 129 Cal.App.4th 11, 18–19 [doctrine of law of the case precluded summary

judgment against plaintiff in malicious prosecution action where appellate court

previously ruled plaintiff presented prima facie case of malice and lack of probable cause

to defeat defendant's anti-SLAPP motion].)  Here, however, the only issue "actually

presented and determined by the court" (*People v. Shuey*, *supra*, 13 Cal.3d at p. 842) was

the sufficiency of the Lanes' showing (in opposition to Bell's anti-SLAPP motion) on the

issues of lack of probable cause and malice.  (*Lane I*, *supra*, 2015 Cal.App. Unpub. Lexis

78.)  The "favorable termination" element was only cursorily acknowledged, in both the

Lanes' showing in opposition to the anti-SLAPP motion as well as in their appeal of the

ruling on that motion which resulted in *Lane I*.  Indeed, the actual judgment in the

underlying action—which demonstrated that Bell achieved a partial recovery, thus

eliminating the favorable termination element on the Lanes' malicious prosecution

---

9       In *Lane I*, this court (in affirming the trial court's denial of Bell's anti-SLAPP
motion) synopsized the three elements required for a malicious prosecution action and
then stated that on the element of "Favorable Termination: the claims underlying the
[Lanes'] malicious prosecution action were Bell's claims for elder abuse . . . and for
intentional infliction of emotional distress.  Each of those claims were dismissed by
nonsuit.  Accordingly, the Lanes provided evidence that satisfied the first element."

24

claim—was not included in the appellants' appendix in *Lane I*.  Nor did the appellate briefs in *Lane I* anywhere mention (much less discuss the significance of) *StaffPro* or *Crowley* or their impact on the Lanes' malicious prosecution action.[10]  Under these circumstances, we conclude application of the law of the case doctrine is inappropriate because "the disputed issue was not presented or considered in the proceedings below" (*George Arakelian Farms*, *supra*, 49 Cal.3d at p. 1281) and, alternatively, "application of the doctrine would result in a manifest injustice."  (*Ibid.*)

---

[10]     The Lanes have moved that we take judicial notice of the Appellants' Opening Brief and the Respondents' Brief filed in *Lane I*, and Bell has moved that we additionally take judicial notice of the Appellants' Reply Brief filed in *Lane I*.  On our own motion, we take judicial notice of the entire file in *Lane I*, which "obviates the need to take judicial notice of the documents appearing both in that file and in [their] request for judicial notice."  (*ABF Capitol Corp. v. Grove Properties Co.* (2005) 126 Cal.App.4th 204, 211–212, fn. 1.)  The Lanes also ask that we take judicial notice of the "Points and Authorities in Support of Defendant Joan Bell's Motion for Prevailing Party Status and Attorney Fees and Costs" filed in San Diego Superior Court Case No. 37-2011-00067396-CU-OR-EC.  In light of our analysis, that document lacks relevance and we therefore deny that aspect of the Lanes' request for judicial notice.  (*Davis v. Southern California Edison Company* (2015) 236 Cal.App.4th 619, 632, fn. 11.)

## DISPOSITION

The judgment is affirmed.  Respondents are entitled to costs on appeal.


DATO, J.

WE CONCUR:


BENKE, Acting P. J.


NARES, J.

26